845 So.2d 161 (2003)
SWIRE PACIFIC HOLDINGS, INC., Appellant,
v.
ZURICH INSURANCE COMPANY, Appellee.
No. SC02-613.
Supreme Court of Florida.
April 10, 2003.
*163 Elliot H. Scherker, Marlene K. Silverman, and Elliot B. Kula of Greenberg Traurig, P.A., Miami, FL, for Appellant.
Janet L. Brown of Boehm, Brown, Seacrest & Fischer, Maitland, Florida; and Thomas W. Brunner, Leslie A. Platt, and Gary P. Seligman of Wiley, Rein & Fielding LLP, Washington, DC, for Appellee.
Ronald L. Kammer of Hinshaw & Culbertson, Miami, FL, for Insurers' Technology Litigation Roundtable, Complex Insurance Claims Litigation Association and National Association of Mutual Insurance Companies, Amici Curiae; and the American Insurance Association, Amicus Curiae.
LEWIS, J.
We have for review three questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit to be determinative of a cause pending in that court and for which there appears to be no controlling Florida precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.
Swire Pacific Holdings ("Swire") is the owner and developer of a high-rise condominium building in Miami, Florida, while Zurich American Insurance Company ("Zurich") is the successor in interest to Zurich Insurance Company. See Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 284 F.3d 1228, 1229 (11th Cir.2002). The Court of Appeals for the Eleventh Circuit, in its opinion certifying three questions for this Court's review, detailed the relevant facts and procedural history:
Swire purchased from Zurich a builder's risk policy, effective February 24, 1997, through February 24, 1999, which was drafted in relevant part by Zurich. The policy insured the Two Tequesta Point Condominium Project, located in Miami, Florida. Swire is one of the insureds under the policy.
In March of 1998, the City of Miami's Building Department informed Swire that Richard Klein, the structural engineer on the condominium project, was being investigated in connection with certain design projects for failure to comply with appropriate governmental building codes and ordinances. Swire's agent, CHM Consulting Engineers, performed a peer review of Klein's structural work on the project and the potential claim of damage arising from that structural work. While the peer review was underway, the City of Miami halted the issuance of a certificate of occupancy. The peer review revealed numerous errors and omissions in the project that had to be corrected.
As a result of the design defects, Swire altered the plans and construction to bring the building into compliance with appropriate governmental building codes. Swire spent approximately $4.5 million in costs to correct the structural deficiencies and filed a claim with Zurich under its builder's risk policy seeking coverage for those costs. Zurich denied coverage on the ground that Swire's claim dealt "with the cost of correcting a design defect and not any physical loss or damage resulting from the defect."
. . . .
In October of 1999, Swire filed a two-count lawsuit against Zurich. Count I sought declaratory and monetary relief to determine Swire's rights to insurance *164 coverage under the Builder's Risk Policy. Count II sought recovery of money damages arising out of Zurich's failure to provide coverage for loss incurred in correcting the structural deficiencies of the building. Zurich filed an answer containing affirmative defenses. The fourth one asserted that Swire's loss was specifically excluded from coverage due to the Design Defect Exclusion Clause of the policy.
Swire sought partial summary judgment on Count I of its complaint and on Zurich's fourth affirmative defense, arguing that Swire was entitled as a matter of law to a declaration that the Design Defect Exclusion Clause invoked by Zurich does not apply to costs incurred by Swire under the policy's Sue and Labor Clause. Swire alternatively argued that the Design Defect Exclusion Clause does not exclude any costs for work that necessarily damages or destroys portions of the insured property as a result of required remediation or repair of defective property. Zurich moved for summary judgment in its favor on the grounds that the Design Defect Exclusion Clause bars coverage for Swire's claim, the Design Defect Exclusion Clause applies to sue and labor expenses, and the Sue and Labor Clause at issue applies only to actual, covered loss or damage anyway.
The district court granted summary judgment in favor of Zurich. It concluded that Swire's loss was an excluded loss under the policy's Design Defect Exclusion Clause. The court also held that the policy's Sue and Labor Clause did not provide coverage for otherwise excluded losses. Relying on Southern California Edison Co. v. Harbor Insurance Co., 83 Cal.App.3d 747, 148 Cal. Rptr. 106 (1978), the court reasoned that sue and labor expenses are reimbursable only to the extent that they are incurred for the benefit of the insurer in mitigating or preventing a covered loss. The court held that the answer to the question of whether expenses are incurred for the benefit of the insurer lies not in whether the insured's actions may potentially benefit the insurer in some way, but in whether the insured's actions "correlate to an excluded loss." Because the actions taken by Swire correlated to the excluded loss of repairing design defects, the court found that the costs incurred by Swire were not incurred for the benefit of Zurich and thus were not reimbursable under the Sue and Labor Clause. The district court stated that it was unnecessary to reach the issue of whether the Sue and Labor Clause applies only when an actual, covered loss has occurred.
Id. at 1229-31. The Eleventh Circuit noted that because this case presents several issues of first impression under Florida law, it "could guess how the Florida Supreme Court would decide this case, but it would only be a guess." Id. at 1234. The court then certified the following questions to this Court:
1. Whether the policy's Design Defect Exclusion Clause bars coverage for the cost of repairing the structural deficiencies in the condominium building;
2. If the first question is answered in the affirmative, whether the policy's Sue and Labor Clause applies only in the case of an actual, covered loss;
3. If the second question is answered in the negative, whether the policy's Sue and Labor Clause covers the cost of repairing the structural deficiencies in the condominium building.
Id. Based on the analysis below, we answer the first two questions in the affirmative and, therefore, find it unnecessary to address the third.
*165 Initially, we note that when analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others. Here the general nature of the risk assumed and contract with which we are dealing is a builder's risk policy. Builder's risk insurance is a type of property insurance coverage, not liability insurance or warranty coverage. The purpose of this type of insurance is to provide protection for fortuitous loss sustained during the construction of the building. If a described loss occurs, the insurer generally pays the cost of removing the debris, salvaging material and equipment, and repairing the damaged property. However, those losses for which coverage is provided are clearly dependent upon the specific language of the builder's risk policy. With this in mind, we turn to the first certified question.
First, the policy contains a coverage clause which provides:
INSURING AGREEMENT
Subject to the limitations, exclusions, terms and conditions contained herein, this Policy insures, in respect of occurrences happening during the term of this Policy, against: Physical loss or damage to the property insured, except as excluded hereunder.
Excluded from this coverage, however, are losses related to design defects. The design defect exclusion clause at issue in the Swire-Zurich policy excludes coverage for:
Loss or damage caused by fault, defect, error or omission in design, plan or specification, but this exclusion shall not apply to physical loss or damage resulting from such fault, defect, error or omission in design, plan or specification.
In considering this clause we must follow the guiding principle that this Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy. See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000); Prudential Property & Casualty Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). Further, we consider that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners, 756 So.2d at 34. An ambiguous provision is construed in favor of the insured and strictly against the drafter. See id. In State Farm Mutual Automobile Insurance Co. v. Pridgen, 498 So.2d 1245 (Fla.1986), this Court announced the rule to be followed in the interpretation of exclusionary clauses in insurance policies:
[E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. See Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979). However, "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Id.

Id. at 1248; see also Deni Assocs. of Florida, Inc. v. State Farm Fire & Casualty Ins. Co., 711 So.2d 1135, 1138 (Fla.1998) (following Pridgen rule for interpretation of exclusionary clauses). Notably, simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous. See Eagle American Ins. Co. v. Nichols, 814 So.2d 1083, 1085 (Fla. 4th DCA 2002). *166 Finally, we have consistently held that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners, 756 So.2d at 34; see also § 627.419(1), Fla. Stat. (2002) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.").
In State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So.2d 1072 (Fla.1998), we reasoned, "The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." Id. at 1076. Despite this clear rule, Swire asserts that the lack of a definition of the terms "loss or damage" in the first part of the design defect exclusion clause and the terms "physical loss or damage" in the ensuing loss provision of the design defect exclusion clause creates an ambiguity. Swire fails, however, to provide precedent from any court, or even conflicting definitions for the terms, to support its contention that an ambiguity exists, and relies instead upon the blanket statement that Zurich's failure to define the terms requires this Court to interpret the terms in Swire's favor.
The design defect exclusion clause in the Swire-Zurich Builder's Risk Policy is not ambiguous. "Loss or damage" as used in the first prong of the clause clearly means loss caused directly by the design defect.[1] This type of loss is not covered under the policy. Further, the only reasonable definition for the term "physical loss or damage" as used in the ensuing loss provision of the clause is damage that occurs subsequent to, and as a result of, a design defect. This type of loss is covered under the policy. Under these interpretations, each provision is given its full meaning and operative effect, as required by Florida law. While the clause could have been written many different ways to produce the result, the intent of the contract clause regarding the meaning of the design defect exclusion can be clearly determined and understood, and thus no ambiguity exists.
Having determined no ambiguity exists, next we address the issue of whether the repairs made by Swire, although resulting from a design defect, may nonetheless be compensated under the ensuing loss provision of the design defect exclusion clause. It is not disputed that Swire expended $4.5 million to correct construction flowing from design defects discovered after Swire hired a peer review of the work performed by its structural engineer. As noted above, the first prong of the exclusionary clause precludes recovery when the loss is caused directly by the design defect. The issue therefore becomes whether Swire's expenses in effectuating repairs are excepted from the exclusion under the ensuing loss provision; in other words, whether Swire repaired a physical loss resulting from the design defect so as to escape the exclusionary clause and have reimbursement under the policy.
Several cases outside of Florida have addressed this issue. In Laquila Construction, Inc. v. Travelers Indemnity Co. of Illinois, 66 F.Supp.2d 543 (S.D.N.Y. 1999), a construction company sought recovery under a builder's risk policy where improper concrete had been used in the construction of a high-rise building. See *167 id. at 544. As a result, it was necessary to replace the concrete, and further, certain fixtures, such as heating and cooling ducts and plumbing units, required removal and later reinstallation. See id. The insurance policy contained a clause excluding the "[c]ost of making good faulty or defective workmanship or material." Id. However, the construction company asserted that the expenses incurred in replacing the improper concrete were within the second prong of the clause which provided: "[B]ut this exclusion shall not apply to physical damage resulting from such faulty or defective workmanship or material." Id. The court rejected the insured's position and determined that the construction company's claim fell "squarely into the exclusion clause simply as a cost incurred to make good the defective concrete." Id. at 545. The court held that the claim was nothing more than an attempt to recover for the excluded expenses of repairing its defective workmanship. See id. at 546. The court noted that an exception to an exclusion should not be construed, interpreted, or applied so broadly that it would essentially swallow the exclusion, see id. at 545, and that the construction company's interpretation would result in coverage for virtually all instances of defective workmanship. See id. at 546; see also Allianz Ins. Co. v. Impero, 654 F.Supp. 16 (E.D.Wash. 1986) (holding ensuing loss provision was not applicable because claim was solely for cost of correcting deficiencies in construction not covered under exclusionary clause).
Other courts have voiced similar conclusions. In Narob Development Corp. v. Insurance Co. of North America, 219 A.D.2d 454, 631 N.Y.S.2d 155 (1995), the court held that the collapse of a wall, caused by the plaintiff's defective workmanship, was not covered under a policy that contained the following clause: "We won't cover any loss caused by or resulting from error, omission or deficiency in workmanship or materials as respects the cost of making good such error, omission or deficiency. However, we will cover resulting physical loss caused by or to the Covered Property." Id. at 454, 631 N.Y.S.2d 155. Noting the ensuing loss exception is not applicable if the ensuing loss was directly related to the original excluded risk, the court denied coverage because no collateral or subsequent damage occurred as a result of the collapse of the wall. See id.
In Schloss v. Cincinnati Insurance Co., 54 F.Supp.2d 1090 (M.D.Ala.1999), water rot occurred due to either the faulty installation or design of a roof. The applicable insurance contract provision provided that it did not cover "loss caused by wear and tear, gradual deterioration, rust, corrosion, fungi, mold, dry or wet rot.... But we do insure ensuing covered loss unless another exclusion applies." Id. at 1094. The court interpreted this clause to provide that when a non-covered loss occurs, only a separate loss that occurs as a result of the non-covered loss would be protected. See id. at 1094-95. Applying this provision, the court determined that the expenses incurred in replacing the roof were a part of the cost of repairing the non-covered loss, not a separate ensuing loss, and therefore the expenses were not covered. See id. at 1095; see also Vermont Elec. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co., 72 F.Supp.2d 441, 445 (D.Vt.1999) (holding that an ensuing loss is one that occurs subsequent to the excluded loss; if original loss was also considered an ensuing loss, the exception would swallow the exclusion).
Swire's sole claim here is an attempt to recover the expenses incurred in repairing a design defect. No ensuing loss resulted to invoke the exception to the exclusionary provision. Under the precise terms of this Builder's Risk Policy, the expenses *168 claimed are clearly excluded under the first provision of the design defect exclusion clause, which states the policy does not cover "[l]oss or damage caused by fault, defect, error or omission in design, plan or specification." No loss separate from, or as a result of, the design defect occurred. Therefore, we conclude that under the clear contractual provisions along with the authority of the numerous courts noted above, which we find persuasive, Swire is not entitled to recover the expenses associated with repairing the design defect. To hold otherwise would be to allow the ensuing loss provision to completely eviscerate and consume the design defect exclusion. The first certified question is, therefore, answered in the affirmativethe insurance policy's design defect exclusion clause bars coverage for the cost of repairing the structural deficiencies in the condominium building. This contract does not operate as a warranty for faulty workmanship and should not be transformed into a guarantee against design and construction defects.
In a similar manner, and, we believe logically, as to the second certified question, it is clear that the language contained in the Sue and Labor clause of the Swire-Zurich policy requires that an actual covered loss must have occurred or be in process before the builder can recover under this provision for the expenses claimed. The Sue and Labor clause in the Swire Zurich Builder's Risk Policy, which is inserted only in the conditions section of the policy, provides:
SUE AND LABOR

In case of loss or damage, it shall be lawful and necessary for the INSURED... to sue, labor and travel for, in and about the defense, safeguard and recovery of the insured property hereunder or any part thereof without prejudice to this insurance, nor shall the acts of the INSURED or the Company, in recovering, saving, and preserving the property INSURED in case of loss or damage be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the INSURED and the Company, proportionately to the extent of their respective interests.
(Emphasis supplied.) Notably, this is not a coverage clause and this provision says nothing concerning payment for prevention efforts. It is inappropriate for Swire to attempt to add language to the contract which changes its effect in an attempt to secure coverage. Here, under the plain language of the provision, sue and labor expenses are stated to be recoverable only in the case of loss or damage, not simply when one asserts that the expenses are to prevent a loss. Swire points to three cases from the Fifth Circuit Court of Appeals to support its argument that it should be able to recover under the Sue and Labor clause because of its prevention efforts. See Blasser Bros., Inc. v. N. Pan-American Line, 628 F.2d 376 (5th Cir.1980); Cont'l Food Prods., Inc. v. Ins. Co. of N. Am., 544 F.2d 834 (5th Cir.1977); Reliance Ins. Co. v. The Escapade, 280 F.2d 482 (5th Cir.1960). In each of those cases, the court examined a sue and labor clause and explained:
An insured has the duty to exercise the care of a prudent, uninsured owner to protect insured property so as to minimize or prevent the loss for which the insurer would be liable. The purpose of the sue and labor clause is to reimburse the insured for those expenditures which are made primarily for the benefit of the insurer to reduce or eliminate a covered loss.
Blasser Bros., 628 F.2d at 386 (emphasis supplied). See also Cont'l Food, 544 F.2d at 837 n. 1 ("Since an assured has the duty toward his underwriter to exercise the *169 care of a prudent uninsured owner to protect insured property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy, the clause undertakes to reimburse the assured for these expenditures which are made primarily for the benefit of the underwriter either to reduce or eliminate a covered loss altogether."); Escapade, 280 F.2d at 488 (same).
While the sue and labor clauses in each of those three cases were nearly identical to one another, and were substantially similar to the Swire-Zurich clause,[2] it is important to note that factually, the cases differed significantly from the case before this Court. In each of those cases, a covered loss had already occurred or was in the process of occurring, and the insureds were attempting to be reimbursed under the theory that they had mitigated further loss. This differs substantially from the situation presented here, where no loss had occurred, no loss was in progress, and Swire contended only that its actions prevented a covered loss from ever arising. Those courts were analyzing the sue and labor clauses from the point of view of only that of mitigation, not prevention. Therefore, such analysis is unpersuasive as to the insertion of the subject of preservation into the clause in this contract where a covered loss never occurred.
Furthermore, Wolstein v. Yorkshire Insurance Co., 97 Wash.App. 201, 985 P.2d 400 (1999), is, in our view, also unpersuasive. There, the parties agreed that the sue and labor clause in the contract applied to prevention efforts. See Wolstein, 985 P.2d at 409. In Florida, coverage under an insurance contract is defined by the language and terms of the policy. See Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 359 (Fla. 4th DCA 2001). Here, Zurich correctly contends that the Sue and Labor clause in the Swire-Zurich policy is specifically applicable only after an actual loss has occurred or is occurring. Because Swire was acting to prevent a potential collapse of the building, and no actual loss had occurred, the $4.5 million expended by Swire is not recoverable under the policy's Sue and Labor clause. Therefore, the second certified question is answered in the affirmativethe policy's Sue and Labor clause applies only in the case of an actual, covered loss. Any other conclusion would result in the Sue and Labor clause becoming the primary coverage provision of this contract without regard to the content of the contract or the coverage it was designed to provide.
The reasoning suggested by Swire is certainly logical, to the effect that the preventive measures may have conferred a benefit upon the insurance company. If the Sue and Labor clause had been worded differently or if it had included language concerning the prevention of loss, the conclusion may have been different. However, we must address the specific contract and specific facts before us to render our analysis.
*170 Because we have responded to the second question in the affirmative, it becomes unnecessary to address the third certified question. We conclude our analysis that under the language of the Swire-Zurich Builder's Risk Policy, the money expended by Swire was unquestionably to repair a design defect, and the expenses claimed do not constitute an ensuing loss to be an exception to the exclusionary provision. Therefore, we respond to the first certified question in the affirmativethe insurance policy's design defect exclusion clause bars coverage for the cost of repairing the structural deficiencies in the condominium building. The second question is also answered in the affirmative. The Sue and Labor clause at issue here clearly requires that an actual loss occur before the Sue and Labor clause is applicable. It is unnecessary for us to address the third certified question. Having answered the first two certified questions, we return this case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] The clause itself reads, "Loss or damage caused by fault, defect, error or omission in design, plan or specification...." (Emphasis supplied.)
[2] The sue and labor clause in Blasser Bros. read:

In case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment. The reasonable expenses so incurred shall be borne by the Assured and the Company in proportion as the sum hereby insured bears to the whole value at risk.
628 F.2d at 386 n. 16.