# Third District Court of Appeal

## State of Florida

Opinion filed February 22, 2017.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D16-935
Lower Tribunal No. 14-5167

————————————

**Kathleen Kurtz, P.O.A., and as daughter and best friend of Charlotte James,**
Appellant,

vs.

**AF&L Insurance Company,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, John Schlesinger, Judge.

Neil Rose, (Hollywood); Steven M. Dunn; Jonathan Aronson, for appellant.

Marshall, Dennehey, Warner, Coleman & Goggin, and Stephen J. Poljak, Michael A. Packer and Danielle N. Robinson, (Fort Lauderdale), for appellee.

Before WELLS, ROTHENBERG and LAGOA, JJ.

WELLS, Judge.

Kathleen Kurtz, P.O.A., and as daughter and best friend of Charlotte James, the plaintiff below, appeals from a final summary judgment in favor of AF&L Insurance Company, claiming that the trial court erred in determining that the insurance policy at issue is unambiguous and that the insurer is in full compliance with that policy. Because we agree that no ambiguity exists and that the insurer is in compliance with the policy, we affirm.[1]

## FACTS

In 2000, AF&L issued a long-term care insurance policy to Ms. James. As pertinent here, the policy provides long term care benefits to Ms. James for a maximum of three years generally up to a maximum of $170 per day for each day Ms. James either receives medically necessary services in her home (the home health care benefit) or is confined to a nursing home (the nursing home benefit). The policy also provides for a waiver of premiums after Ms. James has received policy benefits "for at least 90 continuous days while [she] continues to receive Long Term Care on a continuous basis (for Home Health Care, at least 5 days per week)."

For some time before June 2013, Ms. James lived in an independent living facility located at the Five Star Residences of Plantation. As was required by its

[1] We review this matter *de novo*. See Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (confirming that "a question of insurance policy interpretation, which is a question of law, [is] subject to de novo review"); Barcelona Hotel, LLC v. Nova Cas. Co., 57 So. 3d 228, 230 (Fla. 3d DCA 2011) (same).

2

policy, AF&L paid for home health care benefits for Ms. James at the rate of $170 a day:

> **HOME HEALTH CARE:** We will pay a benefit for each day You receive Home Health Care at Home. The benefit will be the lesser of: 1) the Daily Maximum Benefit for Home Health Care set forth in the Policy Schedule [$170]; or 2) the Reasonable Charge for the services provided.[2]

AF&L also waived her premium payments because she had met the policy's conditions for a premium waiver.

Because of an increasing inability to care for herself, on June 6, 2013, Ms. James transferred to the assisted living facility at Five Star. As a consequence, AF&L began to make payments on her behalf under the assisted living facility provision of its policy.[3] Under that provision, AF&L was obligated to pay "the lesser of . . . the Reasonable Charges incurred for daily room and board; or . . . the daily benefit amount for Nursing Home Confinement [$170 a day]." Because the $116 daily cost for room and board at Five Star was less than the $170 cost for nursing home confinement, AF&L began to pay $116 per day for Ms. James' care. And, because an assisted living facility by definition under the policy is not a

---

[2] The term "home" as defined in this policy is "the place where You maintain independent residency. Home does not mean a nursing facility, hospital or other institutional setting."

[3] The policy defines the assisted living facility benefit as an "additional benefit," not a long term care benefit. The only long term care benefits under the policy are those for home health care and nursing home care.

"home," AF&L terminated the premium waiver benefit applicable to long term home health care recipients.

In February 2014, Kurtz on behalf of Ms. James filed the instant breach of contract action. Count I of the complaint alleged that Ms. James still qualified for long term home health care benefits even though she had moved to an assisted living facility and, therefore, policy premiums still should have been waived. Count II alleged that Ms. James was entitled to receive $170 per day in benefits, not just $116 per day, because "marketing materials" and the policy application for her policy "provide[] that [AF&L] would pay up to the nursing home maximum benefit while plaintiff resided in an assisted living facility." To this end, the complaint alleged that the "marketing materials and the policy application" conflicted with the policy provisions defining the assisted living facilities benefit, making the policy ambiguous on this point.

Both parties moved for summary judgment. In her motion, Ms. James argued that she was still entitled to receive home health care benefits despite the fact that the policy definition of "home" did not include an assisted living facility because this policy definition purportedly conflicted with Florida law. Ms. James also argued, consistent with her complaint, that she was entitled to receive $170 in daily benefits because "marketing materials" and the policy application

4

purportedly were "a part of the entire policy" thereby mandating that level of payment.

In her supplemental motion for summary judgment, Ms. James alternatively argued for the first time not that the subject policy is ambiguous, but that the policy "clearly allows for benefits to be coordinated and maximized in various scenarios" so that she "is entitled to receive her room and board at the assisted living facility in combination with 'home health care' to the maximum daily benefit of $170 per day." As support, Ms. James relied upon that portion of the policy relating to assisted living facility benefits which states, "[w]e will pay this benefit *in any combination* with the policy's Long Term Care Benefit [for home health care] until the Maximum Benefit Period [3 years] as shown in the Policy Schedule has been reached." (Emphasis added).

Finding no ambiguity in the policy and no basis for recovery on Ms. James' claims, the court below entered a summary final judgment in favor of AF&L.

**DISCUSSION**

For the most part, Ms. James has abandoned on appeal most of the arguments made below in favor of arguing here that the policy is ambiguous because while "the policy tells an insured who is living in an assisted living facility that the insurer will pay the assisted living facility benefit *in any combination with* the home health care benefit . . . [it also] purports to preclude the home health care

5

benefit when the insured is in an assisted living facility and thus does not reside at 'home.'" (Emphasis added). We reject this argument because reading the policy as a whole it is in not ambiguous. See Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013) ("In construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.' U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007) (quoting Anderson, 756 So. 2d at 34.); see also Swire Pac. Holdings v. Zurich Ins. Co., 845 So. 2d 161, 166 (Fla. 2003) (same)."). Courts should "avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." Swire Pac. Holdings, 845 So. 2d at 165; see also Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007) ("Ambiguities in insurance contracts are interpreted against the insurer and in favor of the insured. To allow for such a construction, however, the provision must actually be ambiguous. A provision is not ambiguous simply because it is complex or requires analysis.") (citations omitted).

We conclude the policy is not ambiguous because the "in any combination" language on which Ms. James relies to claim an ambiguity does not relate to the number of services that must be provided at the same time, but relates instead to the total number of days of service covered during the life of the policy. Specifically, the policy provides coverage for a number of different kinds of

6

services which are defined in the policy: nursing home care, home health care[4], adult day care/hospice services, and assisted living facility care[5] services. By definition, home health care and assisted living facility services and benefits are mutually exclusive. This is so because the policy expressly states that home health care services will be provided to those insureds who maintain independent residences, but not to those living in assisted living facilities. The policy further states that for each day an insured receives "any" home health care benefit, that benefit will be "count[ed] as one full day toward the Long Term Care Maximum Benefit Period." Thus, while Ms. James is covered for a combination of home health care and assisted living facility benefits, both benefits are not covered on a single day. Moreover, a plain reading of those portions of the policy governing home health care and assisted living facility benefits confirms that the language at

---

[4] Defined as "medically necessary services provided to ill, disabled or infirmed persons in their home," with "home" being defined as "the place where You maintain independent residency . . . [but] does not mean a nursing facility, hospital or other institutional setting."

[5] Defined as "a facility that: 1) is engaged primarily in providing ongoing care and related services to at least ten inpatients in one location; 2) provides 24 hour per day care and service sufficient to support needs resulting from the inability to perform Activities of Daily Living or Cognitive Impairment; 3) has an awake, trained and ready to respond employee on duty at all time to provide such care; 4) provides three meals a day and accommodates special dietary needs; 5) is licensed by the appropriate licensing agency in the state to provide such care; 6) has formal arrangements for the services of a Physician or Professional Nurse to furnish medical care in case of emergency; and 7) has appropriate methods and procedures for handling and administering drugs. An Assisted Living Facility does not mean an individual residence or independent living unit or apartment. . . ."

issue relates to the maximum amount of time for which this policy will pay any combination of days of benefits. Simply put, the policy provides that it will pay for home health care while the insured is living at "home," but not in an assisted living facility, and will also pay assisted living facility benefits but only for a combined total of three years:

> We will pay this benefit [assisted living facility care benefit] in any combination with the policy's Long Term Care Benefit [the home health care benefit] until the Maximum Benefit Period [here three years] as shown in the Policy Schedule has been reached.[6]

There is no dispute that while Ms. James was living independently she was receiving the maximum benefit for home health care services ($170 per day) since that amount was less than the reasonable charge for the services provided. There also is no dispute that after she transferred to the assisted living facility she was receiving the lesser of the reasonable charges incurred for daily room and board ($116 per day) and the daily benefit amount for nursing home confinement ($170 per day) as provided by the policy. Because the policy does not permit stacking

---

[6] While the words "of time periods" do not follow "in any combination" in the assisted living facility benefit provision, we find that their inclusion is nevertheless implied when read in harmony with the provision for Long Term Care Maximum Benefit Period. To wit, the assisted living facility benefits provision refers to the "the Maximum Benefit Period as shown in the Policy Schedule." The parties agree that Long Term Care Maximum Benefit of 3 years set forth in the Policy Schedule is applicable here. The Long Term Care Maximum Benefit Period provision clearly provides "Nursing Home Care and Home Health Care may be used in any combination **of time periods** to reach the [3-year] maximum." (Emphasis added).

long term home health care benefits with assisted living facility benefits, the court below correctly concluded that no ambiguity exits.

The same applies to the premium waiver provision. That provision states that premiums will be waived after benefits have been payable for at least ninety continuous days and while the insured "continue[s] to receive Long Term Care on a continuous basis (for Home Health Care, at least 5 days per week)." This provision also states that premiums "will be payable again on the premium due date next following the date [on which the insured] no longer receive[s] Long Term Care on a continuous basis." Here, Ms. James was accorded a premium waiver while she was receiving long term home health care while living independently. However, when she transferred to the assisted living facility, she was no longer covered by the long term care provisions of this policy and was no longer entitled to the premium waiver. No ambiguity with regard to either this provision or its application exists.

Because we agree with the trial court that the subject policy is unambiguous on the issue of coverage for both the home health care benefit and assisted living facility benefit, we agree with the court below that AF&L has been paying appropriate benefits and is not in breach of this policy. Accordingly, the judgment entered below is affirmed.

Affirmed.

9