[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-14037

Non-Argument Calendar

————————————————

COLONY INSURANCE COMPANY,

Plaintiff-Appellee,

*versus*

COASTAL CONSTRUCTION MANAGEMENT, LLC, et al.,

Defendants,

ROSALYNE HOLDINGS, LLC,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-02541-TPB-MRM

———————————

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Rosalyne Holdings, LLC, appeals the district court's grant of judgment on the pleadings in favor of Colony Insurance Company regarding the application of a professional services exclusion exempting Colony from the duty to defend in an underlying state lawsuit. After a careful review of the record, we **AFFIRM**.

## I. Background

Before reaching Colony's federal lawsuit, we briefly outline the facts and underlying state court proceedings. In 2014, Rosalyne hired Forum Architecture & Interior Design, Inc. as the architect for a four-story, 228-unit apartment complex in Sarasota, Florida. Rosalyne hired Ascentia Development Group (ADG) as the project developer and WPC III, LLC as the general contractor. ADG then engaged Coastal Construction Management, LLC under a Professional Services Agreement to provide construction management services as a construction manager and construction consultant for the project. In 2016, Rosalyne began contracting directly with Coastal under a Letter of Understanding. Coastal has two commercial general liability insurance policies issued by Colony.

In 2017, Rosalyne initiated the underlying action against WPC in Florida state court, alleging numerous defects and deficiencies in the completed project.  Coastal and Forum were added as defendants when the second amended complaint was filed in 2019.  Rosalyne alleged one count of breach of contract and one count of negligence against Coastal.

In 2021, Colony initiated this federal lawsuit against Coastal, Rosalyne, WPC, and ADG, asserting it had no duty to defend or indemnify Coastal for the claims alleged by Rosalyne in state court. Coastal, Rosalyne, and WPC answered and asserted affirmative defenses.  Colony moved for judgment on the pleadings based on the "professional services" exclusion in its policies with Coastal. Rosalyne and WPC opposed Colony's motion.  The district court dismissed ADG as a party.  Colony dismissed Coastal as a party, but Coastal stipulated it would be bound by the district court's judgment.  Based on the contents of Rosalyne's complaint and the governing policies, the district court granted Colony's motion for judgment on the pleadings.  Rosalyne timely appealed.

## II. Standard of Review and Applicable Law

"We review a judgment on the pleadings *de novo*." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023) (internal quotation omitted).  In conducting this review, we "accept the facts alleged in the complaint as true

and view them in the light most favorable to the nonmoving party." *Cannon*, 250 F.3d at 1301.

Because the underlying contract originated in Florida and comes to this court by way of diversity jurisdiction, we apply the substantive law of Florida. *See Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). "'Under Florida law, insurance contracts are construed according to their plain meaning.'" *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). Florida courts interpret insurance coverage broadly and insurance exclusions narrowly. *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. Dist. Ct. App. 1984). Therefore, "ambiguities are construed against the insurer and in favor of coverage." *Westchester Gen. Hospital, Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1302 (11th Cir. 2022).

We will not search for ambiguity when a contract is clear. *See Sphinx Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1228 (11th 2005). Further, in Florida, the absence "'of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.'" *Id.* at 1229. (quoting *Swire Pac. Holdings v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003)).

In Florida, the duty of an insurer to defend an insured arises "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005). An insurer must defend an entire

case when the complaint includes claims that fall both within and beyond the exclusion. *See Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405–06 (11th Cir. 1993). Florida uses a burden shifting regime when analyzing insurance exclusions. *Hudson*, 450 So. 2d at 568. An insured must establish that policy coverage applies, but the burden then shifts to the insurer to show that the loss falls within an exception. *Id.* Florida law also instructs "that as a matter of public policy, commercial liability insurance policies . . . do not cover claims for defective or deficient workmanship," which can include compliance with regulatory requirements. *Sekura v. Granada Ins. Co.*, 896 So. 2d 861, 862 (Fla. Dist. Ct. App. 2005).

When determining whether a party rendered a professional service, Florida courts often use "a fact-intensive analysis" that "focus[es] on the act itself and not the character of the individual performing the act." *Alicea Enterps., Inc. v. Nationwide Ins. Co. Am.*, 252 So. 3d 799, 802 (Fla. Dist. Ct. App. 2018). "Florida's courts have consistently interpreted the term 'professional services' to mean those types of services that require specialized training," but the analysis also weighs the presence of a causal connection between the act at issue and the professional services provided. *Westchester*, 48 F.4th at 1304. Overall, "[t]he duty to defend must be determined from the allegations in the complaint." *Jones*, 908 So. 2d at 443.

### III. Analysis

We find that the district court properly held that the professional services exclusion in the commercial liability policy instructs

that Colony had no duty to defend Coastal.  To reach this conclusion, we rely on the text of the exclusion and the allegations in Rosalyne's underlying state court complaint.

Although the policy does not expressly define "professional services," the professional services exclusion provides a nonexhaustive list of examples, including:

> (2) preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
> (3) inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager; [and,]
>
> (4) engineering services, including related supervisory or inspection services[.]

Despite the list's lack of an explicit definition for "professional services," the policy is not ambiguous by default.  *See Sphinx*, 412 F.3d at 1228.  With the text of the professional services exclusion in mind, we turn to a discussion of Rosalyne's allegations against Coastal.

In its second amended complaint in state court, Rosalyne brought two counts against Coastal.  The first count alleges that breaches by Coastal's predecessors are imputed to Coastal, including the following conduct:

failed to properly and timely complete its Work; failed to timely and properly complete punch-list items; and failed to correct inadequate, defective, and noncomplying Work at the Project; and failed to perform services in a good and workmanlike manner and to provide necessary materials in accordance with and pursuant to approved plans and specifications, industry standards and all applicable codes.

The second count against Coastal concerns its role as "construction manager/construction consultant/owner's representative for the Project." Within this count, Rosalyne alleged that Coastal "breached its duty to Rosalyne . . . by failing to ensure that WPC correctly and timely constructed the Project." Individual defects included the following:

(a) Delivering the Project with the Defects and Deficiencies (exclusive of the trash-compactor claim and the Air-Flow Report);

(b) Failing to timely complete the Project;

(c) Failing to construct the Project in compliance with the Florida Building Code and/or other applicable codes;

(d) Failing to construct the Project in compliance with the permitted plans, the specifications, shop-drawings and/or other submittals, manufacturers' requirements, and/or other approved Project documents; *and/or*

(e) Failing to construct the Project in accordance with the prevailing industry standards.

As we examine each defect enumerated by Rosalyne, our focus remains rooted in the individual actions, not the actor. However, the actions at issue in this case are closely intertwined with Coastal's role as a construction manager and consultant. As Rosalyne's reply brief recognizes, "[a]dmittedly, some of the allegations cited by Colony, such as supervising the construction of the project, undoubtedly would fall within the [exclusion]." Since the duty to defend arises as long as only one allegation against the insured party falls beyond an exclusion, *see Lime Tree Vill.*, 980 F.2d at 1405–06, Rosalyne argues that three specific tasks fall beyond the exclusion: "scheduling, compliance, and liaison tasks." Rosalyne alleges that these tasks fall beyond the exclusion because they do not require any specialized training, experience, or skill. Rosalyne suggests that because a few tasks fall beyond the exclusion, Colony has a duty to defend Coastal.

Here, even the scheduling, compliance, and liaison tasks do not trigger a duty to defend Coastal. First, professional service exclusions can apply in Florida when compliance is at issue. Just as the duty to defend was not triggered by the allegations of noncompliance with federal regulation in *Sekura*, 896 So. 2d at 862, the allegations related to compliance here do not create a duty to defend. Similarly, Coastal's actions in setting schedules and as a liaison cannot be separated from what Rosalyne's brief describes as "supervising the construction." The text of the exclusion includes inspection

and quality control activities done "on a project on which you serve as construction manager" among the types of claims barred. Overall, the allegations brought by Rosalyne closely parallel the specific provisions of the professional services exclusion within Coastal's commercial liability policy with Colony.

Viewing Rosalyne's allegations against Coastal in its second amended complaint, the wrongs appear to fall within the professional services exclusion of the commercial liability policies provided by Colony to Coastal. Therefore, because the professional services exclusion applies, Colony had no duty to defend. We thus find that the district court did not err in granting judgment on the pleadings in favor of Colony.

**AFFIRMED**.