# Third District Court of Appeal

## State of Florida

Opinion filed February 26, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1258
Lower Tribunal No. 21-13698 SP
_____

**Anytime Restoration Services of Florida, Inc., etc.,**
Appellant,

vs.

**Citizens Property Insurance Corporation,**
Appellee.


An Appeal from the County Court for Miami-Dade County, Christopher Green, Judge.

Alonso & Perez, LLP and Rafael F. Alonso, for appellant.

GrayRobinson, P.A., Kristie Hatcher-Bolin (Lakeland), Shakiva L. Brown (Fort Lauderdale), and Richard L. Barry (Orlando), for appellee.


Before MILLER, GORDO and BOKOR, JJ.

GORDO, J.

Anytime Restoration Services of Florida, Inc. ("Anytime Restoration") appeals a final summary judgment entered in favor of Citizens Property Insurance Corporation ("Citizens"). We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). For the reasons that follow, we reverse the final summary judgment entered in favor of Citizens and remand for entry of final summary judgment in favor of Anytime Restoration.

## I.

Anytime Restoration brought the underlying action for breach of an insurance contract as an assignee of the insured, Josefina Campos ("Campos"). Citizens issued a homeowners insurance policy to Campos. While the policy was in effect, a vehicle crashed into the property causing damages. Campos timely reported the loss to Citizens. Thereafter, Campos sought the services of Anytime Restoration to remove debris from the property. After performing the services, Anytime Restoration submitted an estimate, an invoice reflecting an amount due of $2,228.16 and an executed assignment of benefits to Citizens.

Citizens denied Anytime Restoration's claim for payment of the mitigation services. In doing so, it advised Anytime Restoration that there was no coverage for damage to "other structures," such as the fence, due to

an exclusion in the policy.[1]  Following the denial of payment, Anytime Restoration filed suit against Citizens for breach of contract.[2]  Citizens filed an answer and asserted affirmative defenses.

Both parties filed competing summary judgment motions regarding whether the mitigation services performed by Anytime Restoration were covered under the policy.  Anytime Restoration argued the services were covered under the policy because the underlying loss was covered under "Coverage A – Dwelling," which provides coverage for the "dwelling" and "structures attached to the dwelling."  Citizens argued the services were directly related to removal and replacement of fencing under "Coverage B – Other Structures," which is excluded from the policy.  It additionally argued there was no coverage under Coverage A because fences are not part of the "principal building."

The trial court held a hearing on the motions.  The trial court subsequently entered an order granting Citizens' motion for final summary judgment, denying Anytime Restoration's motion and entering final judgment for Citizens.  The trial court found the policy is "plain and unambiguous" that

---

[1] Campos opted not to purchase coverage for "other structures" under Coverage B.

[2] Campos filed a separate action for breach of contract against Citizens, which resulted in the payment of an appraisal award.

fencing is not a covered part of the "principal building" and therefore, Anytime Restoration's "charges for removing and replacing wooden, vinyl, or chain link fencing, and reed fencing" are not covered by Coverage A of the policy. Further, the services Anytime Restoration provided were "removal and replacement of fencing" under Coverage B, which is excluded from the policy. This appeal followed.

## II.

"The standard of review of a summary judgment order is de novo[.]" Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000). "Our new summary judgment standard mirrors the standard for a directed verdict such that the inquiry focuses on 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Chowdhury v. BankUnited, N.A., 366 So. 3d 1130, 1134 (Fla. 3d DCA 2023) (quoting In re Amends. to Fla. Rule of Civ. Proc. 1.510, 309 So. 3d 192, 192 (Fla. 2020)). "Insurance policy construction is a question of law subject to de novo review." Arguelles v. Citizens Prop. Ins. Corp., 278 So. 3d 108, 111 (Fla. 3d DCA 2019) (quoting Gov't Emps. Ins. Co. v. Macedo, 228 So. 3d 1111, 1113 (Fla. 2017)). "[A] question of insurance policy interpretation, which is a question of law, is also

subject to de novo review." Id. (quoting Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010)).

## III.

We start with the basic premise that "insurance contracts must be construed in accordance with the plain language of the policy." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005) (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003)). Policy terms "should be given their plain and unambiguous meaning as understood by the 'man-on-the-street.'" State Farm Fire & Cas. Co. v. Castillo, 829 So. 2d 242, 244 (Fla. 3d DCA 2002). Further, "[a] court may resort to construction of a contract of insurance only when the language of the policy in its ordinary meaning is indefinite, ambiguous or equivocal." Id. (citing U.S. Fire Ins. Co. v. Morejon, 338 So. 2d 223, 225 (Fla. 3d DCA 1976)). "If the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations." Id. "In the absence of ambiguity . . . it is the function of the court to give effect to and enforce the contract as it is written." Id.

The Florida Supreme Court has consistently held that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners

5

Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). "Indeed, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders." Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So. 2d 26, 30 (Fla. 2d DCA 2004).

The core dispute in this appeal arises out of different interpretations of the two policy provisions that separate coverage for the "dwelling" and "other structures." The relevant policy provisions under "Coverage A – Dwelling" and "Coverage B – Other Structures" provide as follows:

> A. Coverage A – Dwelling
>
> > 1. We cover:
> >
> > a. **The dwelling** on the "residence premises" shown in the Declarations, **including structures attached to the dwelling**; and
> >
> > b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."
> >
> > This coverage is limited to the "principal building" for the peril of "catastrophic ground cover collapse."
>
> B. Coverage B – Other Structures

1. We cover, other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

The definition section provides:

"Principal building" means that part of your dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling as described under SECTION I – Coverage A.

However, "principal building" does not include:

a. Appurtenant structures, driveways, sidewalks, walkways, decks, patios, pools, spas, or fences;

b. Buildings or other structures covered under Coverage B . . . .

"Residence premises" means:

a. The one family dwelling; or

b. That part of any other building where you reside and which is shown as the 'Location of Residence Premises' in the Declarations.
. . .

"Residence Premises" also includes **other structures . . . at that location.**

The trial court relied on the definition of "principal building" to exclude coverage for the debris removal and temporary fencing services rendered by

7

Anytime Restoration. It found that because the definition of "principal building" excludes fences, the damages were not covered under Coverage A of the policy. Anytime Restoration contends that this was error as the trial court applied the incorrect definition in the policy to determine the type of property covered under Coverage A. It argues the proper definition to be applied is the "dwelling on the 'residence premises.'"

We begin with the plain language of the policy. Coverage A provides coverage for the "dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling" and "[m]aterials and supplies located on or next to the 'residence premises' used to construct, alter or repair the dwelling or other structures on the 'residence premises.'" This provision then limits the available coverage by providing that "[t]his coverage is limited to the 'principal building' for the peril of 'catastrophic ground cover collapse.'"

When "read[ing] [the] policy as a whole, endeavoring to give every provision its full meaning and operative effect," a plain reading of the policy demonstrates that damages to a "dwelling" under Coverage A is limited to the "principal building" for the specific peril of "catastrophic ground cover collapse," but there is no such limitation for other losses. Auto-Owners Ins. Co., 756 So. 2d at 34. Stated differently, the "dwelling," including "structures

8

attached to the dwelling," is covered as defined under "residence premises" for all losses and is only limited to the "principal building" for the peril of "catastrophic ground cover collapse." Thus, the definition of "principal building" should only be applicable when evaluating damages caused by "catastrophic ground cover collapse."

The policy defines "catastrophic ground cover collapse" as the following:

> **[G]eological activity** that results in all of the following:
>
> a. The abrupt collapse of ground cover;
>
> b. A depression in the ground cover clearly visible to the naked eye;
>
> c. "Structural damage" to the "principal building", including the foundation; and
>
> d. The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building."

Here, it is undisputed that the cause of loss was a vehicle crashing into the property. Because the cause of loss was not "catastrophic ground cover collapse," the definition of "principal building" is not applicable and therefore, it was error for the trial court to apply it to exclude damages related to the fencing.

Applying the plain language of the policy, the term "residence premises" includes "[t]he one family dwelling" or "[t]hat part of any other building, where you reside and which is shown as the 'Location of Residence Premises' in the Declarations." It also includes "other structures . . . at that location." We find there is no genuine dispute of material fact in this record that the fence is an iron fence that is attached to the dwelling. Further, Campos "resides" at the property listed as the "location of the residence premises" on the declarations. By its plain language, therefore, the policy establishes that "structures attached to the dwelling," such as the fence here, are covered under Coverage A. See Taurus Holdings, Inc., 913 So. 2d at 532 ("[I]nsurance contracts must be construed in accordance with the plain language of the policy."); Castillo, 829 So. 2d at 244 ("If the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations.") (citation omitted).

Nevertheless, Citizens argues the trial court properly found the fence to be an "other structure" under the policy. Citizens contends that the fence is an "other structure" because it is a structure "connected to the dwelling by only a fence." Contrary to this assertion, the fence is NOT a structure "connected to the dwelling by only a fence"—the connected structure IS a fence. Importantly, there is no genuine issue of material fact in this record

10

that the iron fence is attached to the dwelling. Indeed, it is a "structure[]" attached to the dwelling," which falls squarely under Coverage A.



Because the underlying damages are covered under Coverage A of the policy, we must then determine whether the services performed by Anytime Restoration are covered. The policy, in pertinent part, provides:

> F. Reasonable Emergency Measures
>
> 2. For covered loss caused by SECTION I – PERILS INSURED AGAINST . . .
>
> a. In the event that **covered property** is damaged by an applicable Peril Insured Against, we will pay the reasonable costs incurred by you for necessary measures taken solely to protect **covered property** from further damage.

11

b. If the measures taken involve repair to other damaged property, we will pay for those necessary measures only if that property is **covered** under this Policy and the damage to that property is caused by an applicable Peril Insured Against.

G. Additional Coverages

1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of **covered property** if a Peril Insured Against that applies to the damage property causes the loss; or

(2) Ash, dust or particles . . . .

By a plain reading, these sections cover reasonable expenses for emergency services and debris removal if the underlying damage to the insured's property is covered. As the damage here is covered under Coverage A, there is coverage for the services rendered by Anytime Restoration, which included the removal of debris along with the placement of temporary fencing to prevent intrusion into the property. Accordingly, because there existed no genuine issues of material fact, including the amount of services provided, we find the trial court should have entered final summary judgment in favor of Anytime Restoration in the invoiced amount of $2,228.16. We reverse and remand for the trial court to do so.

12

Reversed and remanded with instructions.