[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12866

Non-Argument Calendar

_____

JOHN PARKER,
KAREN PARKER,

                                                    Plaintiffs-Appellants,

*versus*

SENTRY INSURANCE COMPANY,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:23-cv-00151-JA-PRL

_____

Before JILL PRYOR, BRASHER, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants John Parker and Karen Parker (the Parkers) appeal the denial of their motion for summary judgment and the grant of summary judgment to Defendant-Appellee Sentry Insurance Company (Sentry). After careful review, we affirm.

## I.

Prior to April 1991, John, as a member of the Airline Pilots Association, was offered group long term care insurance with the option to include his wife, Karen. On April 1, 1991, the Parkers purchased identical Sentry Long-Term Care Group Indemnity policies (the Sentry policies). The Sentry policies were intended to reimburse the Parkers for "Medically Prescribed Long Term Care," and the policies provide two main benefits: nursing home care and home health care.

The Parkers faithfully paid their premiums, and the policies have been in full force and effect. In recent years, the Parkers, now in their mid-80s, allege that they have become unable to perform their activities of daily living independently and require long-term care. In the winter of 2021, the Parkers moved to Village Veranda, a Florida assisted living facility, and the staff developed a personalized care plan for each of them. Village Veranda is licensed as an assisted living facility and not as a nursing home under Florida law.

24-12866                 Opinion of the Court                 3

*See* Fla. Stat. § 429.02(5) (defining assisted living facilities); Fla. Stat. § 400.021(12) (defining nursing home facilities).

After settling in at the Village Veranda, the Parkers presented plans of care to Sentry, as required by and defined in the Sentry policies, and submitted claims for reimbursement of the cost of the facility up to the maximum daily nursing home benefit.[1] Sentry invoked the Sentry policies' Alternative Plan of Care (APC) rider and agreed to pay only a portion of the expenses incurred by the Parkers. At the time, Sentry did not explain why it would not pay the Sentry policies' nursing home benefit, nor did it issue a formal denial as to the nursing home benefit or explain what alternative services were being provided pursuant to the APC rider.

The Parkers appealed Sentry's decision, seeking coverage under the nursing home benefit, because they felt they were receiving "Medically Prescribed Long Term Care" in a facility that met the Sentry policies' definition of "nursing home." Sentry denied their appeal, and the Parkers subsequently filed separate suits for breach of contract against Sentry in Florida state court. They specifically argued that Sentry breached its policies when it offered to pay benefits under the APC rather than the Sentry policies' nursing home coverage.

---

[1] The Sentry policies' claim forms required the treating providers to document the Parkers' care needs, but the forms did not ask whether their conditions necessitated care in a nursing home, care at a different kind of covered facility, or care at home.

Sentry removed the cases to the Middle District of Florida,[2] and the district court consolidated the Parkers' cases. Both sides moved for summary judgment. The district court granted Sentry's motion and denied the Parkers' motion because the Sentry policies pay for "Medically Prescribed Long Term Care," the Parkers' choice to reside in Village Veranda was not medically prescribed, and non-care expenses were not covered by the Sentry policies under these circumstances. The Parkers timely appealed.

## II.

The Parkers raise three issues on appeal: (1) whether the Sentry policies require them to present a medically prescribed plan of care that explicitly states their condition requires that they receive care in a "nursing home" as defined in the policy in order for them to qualify for the nursing home benefit;[3] (2) whether the Village Veranda meets the policy definition of a "nursing home"; and (3) whether the policies allow Sentry to parse charges from a covered facility's invoices.

## III.

This court reviews a grant of summary judgment de novo. *Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1317 (11th Cir. 2022).

---

[2] "As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law." *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[3] And, if so, whether the Parkers have submitted sufficient documentation to receive coverage under the policies.

"Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

Under Florida law, the elements of breach of contract are: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992)). The Parkers suffered damages, and the parties agree that a valid contract exists; the issue we need to resolve is whether a breach occurred. We agree with the district court that whether a breach occurred rises and falls on the "Medically Prescribed" language in the policy. When interpreting an insurance contract under Florida law, a court should construe the contract "in accordance with the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).

The plain language of the policy states as follows: "We will pay Your Nursing Home Care Benefit or Home Health Care Benefit for each day of Medically Prescribed Long Term Care. The Daily Benefit will be paid for each day of Nursing Home or Home Health Care after the Waiting Period has been satisfied." "Medically Prescribed Long Term Care" is further defined as "a service, type of care, or procedure that is specified in a plan of care prepared by a Doctor and a registered nurse and is appropriate and consistent with the Doctor's diagnosis and that could not be omitted without adversely affecting Your illness or condition."

We agree with the district court that the Parkers have not presented any evidence of a "Medically Prescribed" service, type of care, or procedure requiring that they live in licensed institutions of any kind to receive the care they need. Both Parkers were medically assessed in November 2021. Karen was initially prescribed assistance with medication management and bathing. Further, in Karen's Resident Health Assessment form, which was completed when she moved into Village Veranda, it specifically stated that her needs could (not must) be met at an Assisted Living Facility, "which is not a medical, nursing, or psychiatric facility." John was similarly assessed after moving into Village Veranda, and it was determined that he only required assistance with medication management. John initially received assistance with toileting due to the newness of his colostomy, but that care was discontinued. Like with Karen, Village Veranda completed a Resident Health Assessment form for John, which unequivocally stated that John's needs *could* be met at an Assisted Living Facility, which is "not a medical, nursing, or psychiatric facility."

Because we find that the Parkers' long-term care is not "Medically Prescribed Long Term Care" under the Sentry policies, we need not address whether Village Veranda is a "nursing home" under the policies and whether the policies allow for parsing of expenses. We, therefore, affirm the district court's grant of summary judgment for Sentry.

**AFFIRMED.**