973 So.2d 510 (2007)
FIRST PROFESSIONALS INSURANCE COMPANY, INC., Appellant/Cross-Appellee,
v.
Barbara McKINNEY, M.D., Appellee/Cross-Appellee/Cross-Appellant.
No. 1D06-6240.
District Court of Appeal of Florida, First District.
December 17, 2007.
Rehearing Denied February 5, 2008.
*511 Shannon Kain and Dinah Stein, of Hicks & Kneale, P.A., Miami, for Appellant/Cross-Appellee.
Kelly B. Mathis and Marteal D. Lamb, of Mathis & Murphy, P.A., Jacksonville, for Appellee/Cross-Appellant.
BROWNING, C.J.
The trial court issued an order granting partial summary judgment in favor of Appellee/Cross-Appellant, Barbara, McKinney, M.D., and denied a motion for reconsideration filed by Appellant/Cross-Appellee, First Professionals Insurance Company, Inc. (FPIC). The final judgment awarded attorney's fees and costs to Dr. McKinney pursuant to section 627.428(1), Florida Statutes (2006), upon rendition of the judgment against the insurer under a policy executed by the insurer. In this appeal, FPIC contends that the lower tribunal erred as a matter of law in failing to grant summary final judgment in favor of FPIC on Dr. McKinney's claims for declaratory relief and breach of contract. Dr. McKinney cross-appeals the order on attorney's fees and costs, asserting that the trial court erred in failing to make specific findings regarding the amount of fees and costs awarded. Concluding that the trial court erred in determining that professional liability insurance policy # 33264 contains internally contradictory language and is ambiguous, such that it must be construed against FPIC, we reverse the final judgment and the award of "prevailing party" attorney's fees and costs and remand with instructions to the trial court to enter summary final judgment in favor of FPIC.
Dr. McKinney has worked as a parttime pathologist since completing her medical training. On several occasions, Dr. McKinney performed medical services for FPIC's insureds, Drs. Kim and Esfahani, at the Orange Park Medical Center. Whenever she substituted for Drs. Kim or Esfahani, Dr. McKinney would either work as a "locum tenens"that is, a medical practitioner who temporarily takes the place of another doctoras an additional insured on one of their insurance policies issued by FPIC, or obtain her own professional liability insurance policy directly from FPIC for the particular date(s) in question. The locum tenens acknowledgment between Drs. Kim and McKinney provided that Dr. McKinney would be an additional insured on Dr. Kim's policy for the date March 17, 2000. The substantially identical acknowledgment between Drs. Esfahani and McKinney provided that Dr. McKinney would be an additional insured on Dr. Esfahani's policy for the dates March 17, 30, and 31, 2000.
In correspondence sent by facsimile to FPIC, Dr. McKinney requested her own temporary professional liability coverage to work with Dr. Kim: specifically, daily *512 policy coverage for the dates March 30 and 31, 2000; and April 6, 12, 13, 17, 21, and 27, 2000. In further correspondence to FPIC, Dr. McKinney wrote: "I need short term insurance coverage for April 10, 2000 for Orange Park Medical Center working with Zoo E. Kim, M.D." Neither correspondence requested coverage for the date April 11, 2000. Responding to Dr. McKinney's request for coverage on April 10, 2000, FPIC issued her policy # 33264.
This written policy comprised approximately 15 pages and included an identifiable heading for each section. The front page of the policy booklet contained an instructional provision on how to read the policy, along with a provision directing the insured to the location of the coverage summary and an explanation of the contents of the coverage summary. Under subsection "B" of the section titled "Professional Liability Protection," the policy stated that it provided individual professional liability coverage for damages resulting from the provision of, or failure to provide, professional services to a patient. Subsection "D," titled "When You Are Covered," stated:
To be covered, the professional service must have been performed (or should have been performed) after the retroactive date shown on your Coverage Summary. The claim also must be first made while this policy is in effect.
Under "General Rules," subsection (5) is titled "Optional Extended Reporting Period (Tail)" and states in pertinent part:
When your coverage under this policy ends for any reason, you have the right to buy an optional extended reporting period endorsement commonly referred to as "tail coverage." The optional extended reporting period endorsement will allow you to report to us all valid claims. You may report claims which resulted from incidents that occurred subsequent to the retroactive date and prior to the expiration date of your Certificate.
Under "General Rules," subsection (12) is titled "Your Policy Period" and states in its entirety:
Your policy period begins at 12:01 a.m. standard time (at your address) on the date shown in the Coverage Summary. If this policy replaces policies ending at noon, rather than at 12:01 a.m., you will be covered starting at noon when coverage under the old policy ends. Your coverage is scheduled to end at 12:01 a.m., standard time, on the expiration date. If all or part of this policy is cancelled for any reason before that date, that coverage will end at 12:01 a:m. standard time on the cancellation date.
The "Coverage Summary" for policy # 33264 states in pertinent part: "Your policy begins 04/10/2000 and ends on 04/11/2000. Your retroactive date is 04/10/2000 for professional liability." An endorsement to the policy provided tail coverage, effective April 11, 2000. The endorsement stated, in relevant part:
WHEN YOU ARE COVERED
You may report claims which occurred between your retroactive date of April 10, 2000 and your termination date of April 11, 2000.
Around September 14, 2003, more than three years after Dr. Kim cancelled his FPIC insurance policy and subsequent to Dr. Esfahani's cancellation and/or non-renewal of his FPIC insurance policy, Dr. McKinney was served with a Notice of Intent to Initiate Litigation for Medical Malpractice on behalf of Rebecca Carawon. The notice alleged that medical care provided to Mrs. Carawon by Drs. Kim and McKinney on April 14, 1998; April 22, 1999; March 16, 2000; and April 11, 2000, fell below the acceptable standard of care. *513 Mrs. Carawon specifically alleged that Dr. McKinney had examined a specimen from her breast on March 16, 2000; April 11, 2000; and August 7, 2001, and had misdiagnosed breast cancer based on the examinations that occurred on those particular dates.
Upon receipt of this notice of intent, Dr. McKinney communicated Mrs. Carawon's claim to FPIC and sought to invoke cover age under policy # 33264 for the treatment date April 11, 2000. Initially, FPIC provided a defense for Dr. McKinney during its investigation of the dates of Mrs. Carawon's treatment. After determining that no coverage existed under policy # 33264 for the date April 11, 2000, FPIC withdrew its defense. The instant coverage action followed.
Dr. McKinney filed a two-count complaint against FPIC claiming breach of contract and seeking declaratory relief. Dr. McKinney alleged that FPIC, as her insurance carrier, had a duty to provide coverage as a result of a claim for medical malpractice made against her. The complaint sought a declaratory judgment for coverage and damages for breach of contract based on policy # 33264 (issued directly to Dr. McKinney) and based on the locum tenens acknowledgments that she had entered with Drs. Kim and Esfahani. The breach of contract count relied, first, on policy # 33264. Second, this count alleged that pursuant to the locum tenens policies executed by Drs. Kim and Esfahani naming Dr. McKinney as an additional insured on policy # # 6646 and 27035, respectively, Dr. McKinney was entitled to receive notice of non-renewal or cancellation of the policy under section 627.4133, Florida Statutes (2000).
Later, Dr. McKinney moved for partial summary, judgment based on policy # 33264, on the grounds that the policy provided coverage for the dates April 10 and 11, 2000, so that FPIC had a duty to defend her against Mrs. Carawon's medical malpractice claim. FPIC moved for summary judgment on the grounds that policy # 33264 covered professional services rendered on April 10, 2000, only; that Dr. McKinney was not entitled to any relief under the two locum tenens acknowledgments because Drs. Kim and Esfahani had cancelled their policies with FPIC, without purchasing tail coverage, long before Mrs. Carawon's September 2003 notice of intent was presented; and that the breach of contract claim should be dismissed because section 627.4133(1), Florida Statutes (2000), which requires notice to be given by the "insurer" to "the named insured," does not apply to additional insureds such as Dr. McKinney.
In its order on Dr. McKinney's motion for partial summary judgment, the trial court determined that policy # 33264 provided coverage for the allegations of medical malpractice alleged to have occurred on April 11, 2000, because, at best for FPIC, the language in the policy created ambiguity as to the coverage date(s), which lack of clarity inured to the benefit of Dr. McKinney, as the insured. See Roberson v. United Servs. Auto. Ass'n, 330 So.2d 745, 746 (Fla. 1st DCA 1976) ("Insurance policies are construed liberally in favor of the insured and strictly against the insurer."). Specifically, the court found that the policy period language conflicted with the coverage summary language in the policy, creating ambiguity. The court concluded that because policy # 33264 obligated FPIC to defend Dr. McKinney in the Carawon lawsuit, the insurer breached that duty. This appeal and cross-appeal followed.
We review de novo the trial court's interpretation of the insurance policy contract, the determination of whether the law requires the insurer to provide coverage, and the ruling on the motion for *514 partial summary judgment. See Am. Strategic Ins. Co. v. Lucas-Solomon, 927 So.2d 184, 186 (Fla. 2d DCA 2006); Barrier v. Rainey, 890 So.2d 357, 359 (Fla. 1st DCA 2004). Section 627.419(1), Florida Statutes (2000), states:
Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.
"Like other contracts, contracts of insurance should receive a construction that is reasonable, practical, sensible, and just." Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26, 29 (Fla. 2d DCA 2004). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000); see Riveroll v. Winterthur Int'l Ltd., 787 So.2d 891, 892 (Fla. 3d DCA 2001). In other words, a single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 166 (Fla.2003); St. Paul Guardian Ins. Co. v. Canterbury Sch. of Fla., 548 So.2d 1159, 1160 (Fla. 2d DCA 1989) (finding no ambiguity in insurance contract titled "Trustee and Personnel Liability Policy," where declaration page of policy listed "insured's name and address" as the school's name and address, whereas definitional portion of policy clarified that "insured" meant elected or appointed trustees or school directors and employees, and school paid premiums for a trustee and personnel liability policy). The mere fact that an insurance contract is complex and requires some analysis to interpret it does not, by itself, render the agreement ambiguous. See Swire Pac. Holdings, 845 So.2d at 165. Absent ambiguity or inconsistency, "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Anderson, 756 So.2d at 34.
FPIC asserts, and we agree, that construed as a whole agreement, policy # 33264 is neither internally conflicting nor ambiguous. To support affirmance of the favorable judgment, Dr. McKinney focuses on the coverage summary, which provided that this policy "begins 04/10/2000 and ends on 04/11/2000." Dr. McKinney suggests that if the policy were intended to cover just the first day, FPIC easily could have written: "This policy provides coverage for April 10, 2000, only." Instead, in a different section of the policy, clearly titled "Your Policy Period," the contract states straightforwardly that Dr. McKinney's policy period begins at 12:01 a.m. standard time on the date shown in the coverage summary and is scheduled to end at 12:01 a.m. standard time on the expiration date. The only reasonable construction of this significant qualifying language is that Dr. McKinney's policy expired at 12:01 a.m. on April 11, 2000. When these sections are read together, as the law requires, the language is not ambiguous, uncertain, or genuinely inconsistent. Dr. McKinney is not entitled to receive more insurance coverage than that for which she contracted. She requested in writing short-term insurance coverage for April 10, 2000. We have found no documentation in the record indicating that Dr. McKinney ever requested coverage for April 11, 2000, and nothing stated during the oral arguments in this appeal suggested otherwise.
Subsection "D," titled "When You Are Covered," states in part that "[t]he claim also must be first made while this policy is *515 in effect." As such, policy # 33264 was a "claims made" policy, meaning that coverage would be provided for any claims actually made during the policy period arising out of an incident that occurred during the policy period. See Doctors Co. v. Health Mgmt. Assocs., Inc., 943 So.2d 807, 808 (Fla. 2d DCA 2006). However, subsection (5) under "General Rules" in the policy provided that the insured could purchase an extended reporting period endorsement, referred to as "tail coverage." The policy explained that this endorsement would allow the insured to report all valid claims "which resulted from incidents that occurred subsequent to the retroactive date and prior to the expiration date of your Certificate." Dr. McKinney purchased a tail coverage endorsement for policy # 33264, which listed the "effective date" as April 11, 2000, and stated in relevant part that the insured could report claims that occurred between the "retroactive date of April 10, 2000 and your termination date of April 11, 2000." The effect of this endorsement on this claims-made policy was to extend the reporting period in which the insured could report a claim. See United States Fire Ins. Co. v. Fleekop, 682 So.2d 620, 623 (Fla. 3d DCA 1996) (stating that "`tail' or discovery period coverage essentially supplements a claimsmade policy to give the insured added protection"); Arad v. Caduceus Self Ins. Fund Inc., 585 So.2d 1000, 1001 (Fla. 4th DCA 1991). Instead of requiring the insured, Dr. McKinney, to report a claim (occurring during the policy period) within that same policy period, the endorsement allowed her to report a claim on a date after the policy's expiration date. The trial court erroneously concluded that the policy's tail coverage endorsement contradicted the language contained in the coverage summary and in the "Your Policy Period" provision. Noting our obligation to "read each policy as a whole, endeavoring to give every provision its full meaning and operative effect," as is required by Anderson, 756 So.2d at 34, we conclude that the policy is not ambiguous as to the policy coverage period and expiration date. See also Riveroll, 787 So.2d at 892.
Given the fact that policy # 33264 unambiguously covered Dr. McKinney for the requested date, April 10, 2000, and for the first minute on April 11, 2000, the trial court erred in finding ambiguity and, therefore, in construing the policy language in favor of the insured. We REVERSE the order on partial summary judgment and REMAND with instructions to the trial court to enter summary judgment in favor of FPIC. Because Dr. McKinney's motion for attorney's fees and costs was based on a "prevailing party" theory, our holding on the merits compels REVERSAL of the motion granting attorney's fees and costs.
KAHN and ROBERTS, JJ., concur.