# Third District Court of Appeal

## State of Florida

Opinion filed December 15, 2021.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D20-0729
Lower Tribunal No. 18-28960

————————————

**People's Trust Insurance Company,**
Appellant,

vs.

**Miguel Tosar and Maria Tosar,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Beck Law, P.A., and Joshua S. Beck (Boca Raton); Brett R. Frankel, Jonathan Sabghir and Robert B. Gertzman (Deerfield Beach), for appellant.

Mintz Truppman, P.A., and Timothy H. Crutchfield, for appellees.


Before SCALES, HENDON and MILLER, JJ.

SCALES, J.

In this first party insurance action, People's Trust Insurance Company ("People's Trust"), the defendant below, appeals an April 23, 2020 order granting final summary judgment in favor of the plaintiffs below, Miguel and Maria Tosar ("the insureds"). The trial court's order directs People's Trust to issue a loss payment to the insureds in the amount of an appraisal award achieved through a court-ordered appraisal process. Because, under a policy endorsement, People's Trust timely exercised its right to repair the insureds' damaged property instead of making a loss payment, we reverse the challenged order and remand with directions for entry of an order requiring the insureds to comply with the policy's endorsement.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. The Insureds' Insurance Policy

People's Trust issued a homeowner's insurance policy covering the insureds' Miami home for the policy period between November 4, 2016 and November 4, 2017. The policy insured the dwelling (coverage A) and other structures (coverage B) at replacement cost value and included a $6,180 hurricane deductible.

In return for a premium discount, the subject policy contained a Preferred Contractor Endorsement ("the policy endorsement"). The policy endorsement gave People's Trust a right-to-repair option, i.e., after

2

inspecting a covered loss, People's Trust had the option to select its own contractor, Rapid Response Team, LLC ("RRT"), to repair the damages to the insureds' property in lieu of issuing a loss payment that would otherwise be due under the policy.[1] The policy endorsement required People's Trust to notify the insureds of its election of its right to repair within thirty days of its inspection of the reported loss. Should People's Trust exercise its right to repair, the policy required the insureds to pay the policy deductible and to execute the necessary work authorizations and permit applications for RRT to perform the repairs.[2]

---

[1] The policy endorsement added the following to the Loss Payment provision contained within "SECTION I – CONDITIONS":

>  K. Loss Payment, the following is added to the policy:
>
>  4. When we have exercised our option to repair "your" damaged property pursuant to this Preferred Contractor Endorsement, we will repair the damaged property with material of like kind and quality without deduction for depreciation. Such repair is in lieu of issuing any loss payment that would otherwise be due under the policy.

[2] "SECTION I – CONDITIONS" of the policy provided:

>  J. Our Option
>
>  At our option:
>
>  . . . .

The policy endorsement also contained an appraisal clause that applied only when People's Trust exercised its right to repair and when the parties disagreed as to the amount of the covered loss and the scope of repairs to be performed by RRT. The appraisal clause expressly reiterated that the repairs to be performed by RRT were in lieu of any loss payment under the policy.[3]

The policy endorsement also modified that portion of the policy providing additional coverage (under coverage E) for reasonable expenses incurred by the insureds immediately following a loss to protect damaged property from further damage (i.e., the "Reasonable Repairs" provision).[4]

---

2. For losses covered under Coverage A – Dwelling, insured for Replacement Cost Loss Settlement as outlined in SECTION I – Conditions, Loss Settlement, we may repair the damaged property with material of like kind and quality without deduction for depreciation.

3. [As amended by the policy endorsement,] "We" will provide written notice to "you" no later than thirty (30) days after "our" inspection of the reported loss, unless factors beyond "our" control reasonably prevent "us" from doing so.

4. You must comply with the duties described in SECTION I – CONDITIONS, C. 7 and 8.

5. You must provide access to the property and execute any necessary municipal, county or other governmental documentation or permits for repairs to be undertaken.

6. You must execute all work authorizations to allow contractors and related parties entry to the property.

7. You must otherwise cooperate with repairs to the property.

8. You are responsible for payment of the deductible stated in your declaration page.

9. Our right to repair or replace, and our decision to do so, is a material part of this contract and under no circumstances relieves you or us of our mutual duties and obligations under this contract.

[3] The policy endorsement's appraisal provision provided, in relevant part:

Where "we" elect to repair:

1. If "you" and "we" fail to agree on the amount of loss, which includes the scope of repairs, either may demand an appraisal as to the amount of loss and the scope of repairs. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, "you" or "we" may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss and scope of repairs. If the appraisers submit a written report of an agreement to "us," the amount of loss and scope of repairs agreed upon will be the amount of loss and scope of repairs. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and the scope of repairs. Each party will pay its own appraiser, and bear the other expenses of the appraisal and umpire equally.

2. The scope of repairs shall establish the work to be performed and completed by Rapid Response Team, LLC™. *Such repair is in lieu of issuing any loss payment to "you" that otherwise*

5

Essentially, this modification required the insureds to notify People's Trust

> *would be due under the policy.* The amount of loss shall establish only the initial amount paid to Rapid Response Team, LLC™ by "us," and any additional amounts required to complete repairs shall be "our" responsibility and will be paid to Rapid Response Team, LLC™ without regard to policy limits or the amounts of initial payments. . . .

(Emphasis added).

[4] The policy endorsement replaces the policy's Reasonable Repairs provision contained within "SECTION I – PROPERTY COVERAGES" with the following:

> E. Additional Coverages
>
> 2. Reasonable Repairs is deleted and replaced by the following for losses other than sinkhole:
>
> a. If a peril causing a loss and related damage are covered (other than sinkhole loss) and repairs are necessary to protect covered property from further damage, "you" must notify us before authorizing or commencing repairs so "we," at our option, may select Rapid Response Team, LLC™ to make the covered Reasonable Repairs.
>
> b. If "you" do not notify "us" and allow "us," at our option, to select Rapid Response Team, LLC™ for the covered Reasonable Repairs, "our" obligation for repairs made to protect the covered property from further damage is limited to the lesser of the following:
>
>> (1) The reasonable cost "you" incur for necessary repairs made solely to protect the property from further damage; or
>>
>> (2) The amount "we" would have paid to Rapid Response Team, LLC™ for necessary repairs made solely to protect the property from further damage.

prior to performing these Reasonable Repairs to allow the insurer to select RRT to perform them. This modification also limited People's Trust's liability in the event that People's Trust was prevented from selecting RRT to perform these Reasonable Repairs.

Relatedly, and of significant importance to this case, to protect People's Trust ability to exercise its right-to-repair option, the policy endorsement also significantly modified the insureds' post-lost duty to protect the property from further damage (i.e., "SECTION I – CONDITIONS C. Duties After Loss 5."). As modified by the policy endorsement, the relevant post-lost conditions are as follows:

SECTION I – CONDITIONS

. . . .

C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft, vandalism or malicious mischief;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in 6. Credit Card, Electronic Fund Transfer Card or Access Device,

7

Forgery And Counterfeit Money under Section I – Additional Coverages;

4. Notice of Hurricane or Windstorm Claims – If Windstorm coverage is provided in this policy a claim, "supplemental claim" or "reopened claim" for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this policy and within three years after the hurricane first made landfall or a windstorm caused the damage.

    This condition concerning time for submission of claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Condition including any amendment to that condition.

5. Protect the property from further damage. If repairs to the property are required, or if the services of a contractor are required to protect the property from further damage, "you" must:

    a. Notify "us" before authorizing or commencing the repairs or services so "we," at our option, may select Rapid Response Team, LLC™ to make covered repairs or perform the services; and

    b. Keep an accurate record of repair expenses;

    If "you" do not notify "us" prior to authorizing or commencing the Reasonable Repairs as described in SECTION I – PROPERTY COVERAGE E. Additional Coverages, or the repairs or services as described in the SECTION I – CONDITIONS – D. Loss Settlement and allow "us" at our option to select Rapid Response Team, LLC™ for such Reasonable Repairs, or such repairs or services, "our" obligation for the Reasonable Repairs, or the repairs or services is limited to the lesser of the following:

    a. The reasonable cost "you" incur for necessary Reasonable Repairs, or for repairs or services; or

8

b. The amount "we" would have paid to Rapid Response Team, LLC™ selected by "us" for necessary Reasonable Repairs, repairs or services. [5]

The policy endorsement's post-loss duty number 5 not only included the original policy's requirement that the insureds protect the property from further damage, but it also required the insureds to notify People's Trust in the event that a contractor was required *either* to protect the property from further damage (i.e., Reasonable Repairs under Coverage E) *or* to repair the property (i.e., a covered loss under Coverages A and B). Like the policy endorsement's Reasonable Repairs provision, the policy endorsement's post-loss duty number 5 similarly limited People's Trust's liability where the insureds' failure to notify People's Trust prevented the insurer from exercising its right to repair.

*B. The Insureds' Policy Claim, People's Trust's Exercise of its Right-to-Repair Option, and People's Trust's Invocation of the Appraisal Process*

---

[5] Prior to its modification by the policy endorsement, post-loss duty number 5 read as follows:

5. Protect the property from further damage. If repairs to the property are required, you must:

a. Make reasonable and necessary repairs to protect the property; and

b. Keep an accurate record of repair expenses.

The insureds' home was damaged by Hurricane Irma on September 10, 2017, and they notified People's Trust of the loss. On October 26, 2017, People's Trust's field adjuster timely inspected the home and prepared an Estimate and Scope of Repairs. The field adjuster's report estimated that the cost of repairing the damage to the insureds' dwelling and other structures, at replacement cost value, was $7,083.64. The report further explained that once the $6,180 hurricane deductible and $32.49 for non-recoverable depreciation were subtracted from the total, the insureds' net claim was $871.15.

On November 24, 2017, People's Trust sent the insureds a letter notifying the insureds that their loss was covered under the policy. In this letter, People's Trust elected "to use its preferred contractor, Rapid Response Team, LLC . . . to repair [the insureds'] property to its pre-loss condition by making repairs to all covered damages" that "exceeded [the insureds'] policy's deductible amount of $6180." The November 24, 2017 letter further notified the insureds that if they disagreed with the Estimate and Scope of Repairs prepared by People's Trust's field adjuster, the insureds should provide a sworn statement in proof of loss detailing what the insureds believed to be the proper scope of repairs and their own repair estimate. Finally, the November 24, 2017 letter informed the insureds that "[s]hould

10

you disagree with our assessment of the cost of repairs to your damages, your policy provides a mechanism for resolving that disagreement and thereafter . . . we will proceed with the repairs at that time, including making arrangements with you for the payment of your deductible." Attached to the November 24, 2017 letter were People's Trust's Estimate and Scope of Repairs, a copy of the policy endorsement and a blank statement in proof of loss form.

On May 29, 2018, the insureds sent People's Trust a letter disputing People's Trust's Estimate and Scope of Repairs and providing their own repair estimate. On July 3, 2018, People's Trust sent the insureds a letter that acknowledged receipt of the insureds' competing repair estimate and, because there was a disagreement as to the scope and cost of repairs, demanded an appraisal pursuant to the policy endorsement's appraisal clause.

*C. The Insureds' Complaint and People's Trust's Omnibus Motion*

Instead of going to appraisal, however, on August 24, 2018, the insureds filed the instant first-party action against People's Trust in the Miami-Dade County Circuit Court. In its two-count complaint,[6] the insureds

---

[6] In count I, the insureds sought damages for People's Trust's alleged breach of contract. In count II, the insureds sought a determination that the loss was covered under the policy.

11

falsely alleged that People's Trust's November 24, 2017 letter had denied coverage for their loss.

In lieu of filing an answer and affirmative defenses, on October 12, 2018, People's Trust filed its omnibus "Motion to Compel Appraisal, Motion to Compel Defendant's Right to Repair, and Motion to Compel Payment of the Policy's Hurricane Deductible and Memorandum of Law." Therein, People's Trust requested that the trial court order the insureds to: (i) participate in the appraisal process pursuant to the policy endorsement's appraisal clause; and (ii) after completion of the appraisal process, authorize RRT to commence the repairs and to pay the $6,180 hurricane deductible.

After holding a hearing on People's Trust's omnibus motion, on January 15, 2019, the trial court ordered an appraisal, but reserved ruling on that part of People's Trust omnibus motion seeking to compel the insureds to authorize RRT to perform repairs and to pay the hurricane deductible. The insureds did not file an interlocutory appeal seeking review of this January 15, 2019 non-final appraisal order. See Fla. R. App. P. 9.130(a)(3)(C)(iv).

### D. The Appraisal Award and the Parties' Competing, Post-Appraisal Summary Judgment Motions

On June 27, 2019, the appraisal panel accepted the insureds' adjuster's valuation and entered an appraisal award determining that the

12

cost of repairing the insureds' dwelling and other structures, at replacement cost value, was $54,146.45. On July 19, 2019, People's Trust then filed its "Motion to Compel Defendant's Right to Repair, and Motion to Compel Payment of the Policy's Hurricane Deductible and Memorandum of Law" ("July 19, 2019 motion"). Therein, noting that the appraisal process had been completed, People's Trust once again requested that the trial court both: (i) order the insureds to authorize RRT to commence the repairs of the insureds property; and (ii) require the insureds to pay the $6,180 hurricane deductible. At a subsequent hearing on People's Trust's July 19, 2019 motion, the trial court orally denied this motion. The court, though, never reduced this ruling to a written order.

On September 13, 2019, the insureds filed a motion for summary judgment on their breach of contract claim, seeking to obtain a loss payment from People's Trust. In their summary judgment motion, the insureds represented that, *following the appraisal award*, they had executed a repair agreement with another contractor to provide the required repairs to their property for $49,000, an amount less than the $54,146.65 appraisal award. Citing to language contained in duty number 5 of the policy's post-loss obligations, as modified by the policy endorsement, the insureds argued that these circumstances entitled them to a loss payment from People's Trust.

13

On March 25, 2020, People's Trust then filed its cross-motion for summary judgment, asserting for the first time that the insureds had materially breached the policy by failing to comply with the policy's provisions. Specifically, People's Trust asserted that, after it timely elected its right to repair and the matter proceeded to appraisal, the insureds breached the policy by refusing to authorize RRT to proceed with the repairs and by hiring their own contractor to perform the repairs to the property. Arguing further that it had been prejudiced by insured's material breach, People's Trust claimed that the insureds had forfeited coverage for this otherwise covered loss.

On April 23, 2020, the trial court conducted a hearing on the parties' competing summary judgment motions. Therein, People's Trust's counsel restated its position from its July 19, 2019 motion that "[People's Trust] wants to repair [the property] and indemnify the insureds as it did when it elected its right to repair in 2017." To this end, trial counsel agreed with the trial court's observation that if the court "let Rapid Response fix it, then People's Trust would be on the hook for . . . any problems created during the repair process." Counsel, however, informed the trial court that "if Your Honor rules that plaintiffs are entitled to use their own contractor, they're in breach of the policy, and therefore, defendant's motion is to void coverage . . . ." Thus,

14

People's Trust presented the court below with two, alternate outcomes that were wholly dependent upon the trial court's resolution of the insureds' alleged, post-appraisal right to hire someone other than RRT to perform the subject repairs.

Following the summary judgment hearing, the trial court entered the challenged order granting the insureds' summary judgment motion, entering final judgment thereon[7] and directing People's Trust to issue a $47,966.45 loss payment to the insureds (i.e., the $54,146.45 appraisal award minus the $6,180 hurricane deductible).[8] People's Trust timely appealed this April 23, 2020 final judgment.

## II.    ANALYSIS[9]

### A. People's Trust's Contractual Right to Repair the Insured Property in Lieu of Issuing a Loss Payment

---

[7] While not entirely clear from the record, presumably the trial court's entry of final judgment for the insureds on their breach of contract claim mooted the insureds' declaratory judgment claim.

[8] In this appeal, the insureds concede that the loss payment should have been $42,820 (i.e., the $49,000 amount of the insureds' pending repair contract minus the $6,180 hurricane deductible). For the reasons discussed, *infra*, the insureds' concession is of no moment because the insureds are not entitled to *any* loss payment in this case.

[9] This Court employs *de novo* review of the trial court's interpretation of an insurance policy and orders granting summary judgment. See Siegel v. Tower Hills Signature Ins. Co., 225 So. 3d 974, 976 (Fla. 3d DCA 2017).

15

After it received notice of the insureds' loss, People's Trust, in a timely manner, adjusted the insureds' claim, acknowledged coverage of their claim and, pursuant to the policy endorsement, exercised its contractual right to select RRT to perform the required repairs of the insured property. Importantly, People's Trust's election of its right to repair created a new contract between RRT and the insureds. See People's Tr. Ins. Co. v. Franco, 305 So. 3d 579, 582 (Fla. 3d DCA 2020) ("The election-to-repair endorsement has been an established option for various Florida residential insurance policy forms for several years. The legal features of the endorsement have been analyzed repeatedly by Florida's appellate courts. The new contract between the insurer's preferred and designated contractor under such an endorsement and the insured has been termed a "Drew agreement," a reference to Drew v. Mobile USA Ins. Co., 920 So. 2d 832 (Fla. 4th DCA 2006)."). "In short, all that is needed for the endorsement to apply is for People's Trust to exercise its option to repair." People's Tr. Ins. Co. v. Espana, 320 So. 3d 940, 944 (Fla. 3d DCA 2021). When People's Trust timely exercised its right to repair the insureds' covered loss, People's Trust was obligated to make those repairs *in lieu of making a loss payment*.[10]

---

[10] See footnote 1, *supra*.

When the insureds' then provided a competing repair estimate disputing the amount of loss and scope of repairs to be performed by RRT, People's Trust timely invoked its right to an appraisal. The policy endorsement's appraisal provision plainly provided that the award reached through the appraisal process – a dispute mechanism available to the parties *only* after People's Trust elected its right to repair – established the "amount of loss" and "scope of repairs" to be performed by RRT *in lieu of a loss payment*.[11]

Once the appraisal panel, in its appraisal award, set the amount of loss and scope of repairs to be performed by RRT, the insureds were then contractually obligated to authorize RRT to perform the repairs and to pay the hurricane deductible.[12,13] The trial court, therefore, should have granted People's Trust's July 19, 2019 motion that sought the same relief again

---

[11] See footnote 3, *supra*.

[12] See footnote 2, *supra*.

[13] We are cognizant of the significant discrepancy between the $54,146.45 appraisal award and People's Trust's $7,083.64 initial estimate of this covered loss. Because the insureds in this case have not asserted that People's Trust breached the insurance contract by underestimating the amount of loss in its initial loss estimate, we need not, and therefore do not, address the issue as to whether such a cause of action would be cognizable, and, if so, what remedy would be available.

sought by People's Trust at the summary judgment hearing. Instead, the trial court transformed the appraisal award into an award of money damages, which was not warranted under the particular facts and circumstances of this case.

As we explained in People's Trust Insurance Co. v. Santos, 320 So. 3d 910, 918 (Fla. 3d DCA 2021), "in order for Insureds to obtain money damages for repairs, Insureds . . . must plead and prove – and the trial court must find – either that People's Trust improperly exercised the right to repair or that the endorsement is otherwise invalid, and that People's Trust breached the insurance contract." Because the insureds failed to make such allegations in their complaint, and there being no other valid basis presented below[14] for the trial court to transform the instant appraisal award establishing the amount and scope of repairs into an award of money damages, we are compelled to reverse the April 23, 2020 order.[15] Id.; Espana, 320 So. 3d at 944 ("[T]he appraisal award, which determined the 'scope of repairs,' should not have been transformed into a loss payment.").

B. *The Policy's Post-Loss Duty Number 5*

---

[14] In section II, B., *infra*, we address and reject the trial court's contractual interpretation of the policy endorsement's post-loss duty number 5.

[15] We discuss the appropriate remedy and our remand instructions in section II. C., *infra*.

18

Notwithstanding the contractual provisions discussed in the previous section, the insureds argue, and the trial court below concluded, that the policy's post-loss duty number 5, as modified by the policy's endorsement, authorized a loss payment to the insureds, despite People's Trust having timely exercised its right-to-repair option. Specifically, the insureds assert that the following policy endorsement language authorizes the subject loss payment:

> If "you" do not *notify "us"* prior to authorizing or commencing the Reasonable Repairs as described in SECTION I – PROPERTY COVERAGE E. Additional Coverages, or the repairs or services as described in the SECTION I – CONDITIONS – D. Loss Settlement *and* allow "us" at our option to select Rapid Response Team, LLC™ for such Reasonable Repairs, or such repairs or services, "our" obligation for the Reasonable Repairs, or the repairs or services is limited to the lesser of the following:
>
> > a. The reasonable cost "you" incur for necessary Reasonable Repairs, or for repairs or services; or
> >
> > b. The amount "we" would have paid to Rapid Response Team, LLC™ selected by "us" for necessary Reasonable Repairs, repairs or services.

(Emphasis added).

"Insurance contracts are to be reviewed as a whole, viewing all words in context." Walker v. State Farm Fire & Cas. Co., 758 So. 2d 1161, 1162 (Fla. 4th DCA 2000); Nationwide Mut. Fire Ins. Co. v. Olah, 662 So. 2d 980, 982 (Fla. 2d DCA 1995) ("When construing an insurance policy to determine

19

coverage the pertinent provisions should be read *in pari materia*."). "[A] single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders." First Professionals Ins. Co. v. McKinney, 973 So. 2d 510, 514 (Fla. 1st DCA 2007). The structure of the policy and the placement of a provision within the policy is key to this analysis. See Express Damage Restoration, LLC v. Citizens Prop. Ins. Corp., 320 So. 3d 305, 308 (Fla. 3d DCA 2021).

With these canons of construction in mind, we analyze the subject provision. While not a model of clarity, the provision is not ambiguous. As outlined in section I. A., *supra*, this post-loss provision – inserted into the policy immediately following four post-loss obligations that each require the insureds to provide specific notice to People's Trust – merely limits People's Trust's liability in the event the insureds fail to provide notice to People's Trust so as to frustrate the insurer's ability to exercise its right-to-repair option. Specifically, the provision's limitation on People's Trust's liability applies only when the insureds fail to "notify" People's Trust prior to authorizing or commencing work "*and"* this failure to notify acts to "[dis]*allow*" People's Trust from exercising its right-to-repair option. In this case, because the insureds *did* notify People's Trust of the loss so as to allow People's Trust

to exercise its bargained-for right-to-repair option, and People's Trust *did* exercise its right-to-repair option, this provision is simply inapplicable.

Contrary to the insureds' suggestion, this provision does not authorize an insured, after People's Trust has exercised its right-to-repair option, either to hire its own contractor to effectuate the repairs or to obtain a loss payment. Indeed, such a construction of the provision – viewed in isolation from the policy's other operative provisions – would both (i) upend the insurer's right-to-repair option and (ii) render meaningless the policy endorsement's clear mandate that when People's Trust exercises its right-to-repair option, such repair is in lieu of issuing any loss payment that would otherwise be due under the policy.[16] See Universal Prop. & Cas. Ins. Co. v. Johnson, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013) ("[A] contract will not be interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so."); Lenhart v. Federated Nat. Ins. Co., 950 So. 2d 454, 457 (Fla. 4th DCA 2007) ("To ascertain the meaning of policy text, courts should read the whole policy and attempt to give every provision the full meaning and import of its words.").

*C. Our Amaro Decision and the Appropriate Remedy on Remand*

---

[16] See footnotes 1 and 3, *supra*.

Having determined that we are compelled to reverse the challenged order, we now address the issue of remand instructions. While this appeal was pending, this Court issued its decision in People's Trust Insurance Co. v. Amaro, 319 So. 3d 747 (Fla. 3d DCA 2021) which, at least on cursory inspection, suggests that we should remand for entry of a final summary judgment for People's Trust. Indeed, in both cases, People's Trust elected its right to repair under the policy endorsement and, following a court-ordered appraisal, the insureds sought to recover a loss payment from People's Trust because the insureds had authorized a different contractor to perform the repairs. Id. at 749-50. In both cases, People's Trust thereafter moved for summary judgment on the basis that coverage was voided because the insureds had materially breached the policy by impairing People's Trust right to repair. Id. at 750. In both cases, it appears that the insureds argued they were entitled to a loss payment because of the language in the policy's post-loss duty number 5, as modified by the policy's endorsement. Id.[17] Finally, in

_____

[17] Our Amaro opinion does not quote the policy endorsement's post-loss duty number 5 in the body of the decision; however, the opinion does state the following:

> Amaro argues, incorrectly, that the plain language of the policy dictates that People's Trust is still liable to pay Amaro what it would have paid Rapid Response Team for the repairs. Amaro alleged that as a result of his sale of the property, it would be impossible for People's Trust to invoke its option to repair under

22

both cases, the trial court entered a final summary judgment awarding the insureds a loss payment equal to the amount of the appraisal award. Id. at 751.

While the facts in Amaro and in this case are quite similar, one critical fact present in Amaro, but not present here, warrants a different remand instruction. In Amaro, not only had the insured hired another contractor to perform the repairs, but the contractor had also actually performed the repairs and the insured had sold the insured property – thus, rendering RRT's performance under the policy endorsement impossible. Id. at 750. Under those limited circumstances – which are not present here – the Amaro court not only reversed the summary judgment for the insured, but also, on remand, directed the trial court to enter final judgment for People's Trust on its claim that the insured had so prejudiced People's Trust so as to forfeit

_____

the policy's Preferred Contractor Endorsement, and argued that because People's Trust could no longer repair, he was entitled to cash payment in the amount of the appraisal award.

Amaro, 319 So. 3d at 750. Given that Amaro involved a loss incurred during the same hurricane that, by all appearances, was covered by the same policy – including the same policy endorsement – issued by the same insurer, our examination of the instant policy reveals no policy provision or endorsement upon which Amaro could have relied to seek a loss payment other than the policy endorsement's post-loss duty number 5.

coverage under the policy. Id. at 753. At oral argument in the instant case, People's Trust's appellate counsel acknowledged this important factual distinction and agreed that the insureds' performance in this case is not impossible because the insureds have only entered into a repair contract. No repairs contemplated by the repair contract have actually been made to the insured property and nothing in the record suggests that the insureds have transferred ownership of the property. We, therefore, reverse the challenged order and remand with instructions that the trial court direct the insureds to authorize RRT to perform the repairs as outlined by the appraisal award and to pay the hurricane deductible.[18]

## III.  CONCLUSION

---

[18] In Castro v. People's Trust Insurance Co., 315 So. 3d 761 (Fla. 4th DCA 2021), the Fourth District affirmed entry of final summary judgment in favor of People's Trust where the insured authorized another contractor to make repairs to the insured's property following People's Trust's election of its repair right, invocation of the appraisal process, and entry of an appraisal award. In Castro, however, People's Trust filed a declaratory judgment action seeking a declaration that "Castro materially breached the policy by failing to allow Rapid Response to make the repairs and failing to pay the deductible." Id. at 764. Unlike Castro, People's Trust has filed no pleading in this case – be it an answer with affirmative defenses or a counterclaim – alleging that the insureds have materially breached the policy; nor, as was the case in Amaro, has prejudice to People's Trust been conclusively established. Indeed, both below and in this appeal, People's Trust asserts the alternate position that the insureds should be ordered to authorize RRT to make the required repairs and to pay the hurricane deductible as outlined in the policy. We, therefore, find Castro distinguishable.

People's Trust timely elected its right-to-repair option under the policy endorsement. Hence, People's Trust is obligated to repair the covered losses in lieu of any loss payment otherwise due under the policy. Because People's Trust's ability to exercise its right-to-repair option was not impaired by the insureds, the language limiting People's Trust's liability contained in the policy's post-loss duty number 5, as modified by the policy endorsement, is inapplicable to this case. We, therefore, reverse the challenged order that required People's Trust to make a loss payment. Because the repairs have not been made to the insured property and because People's Trust reasserts its entitlement to enforce its contractual right to have RRT repair the insureds' damaged property in accordance with the appraisal award, we remand with instructions that the trial court enter an order directing the insureds to authorize RRT to perform the repairs as outlined in the appraisal award and to pay the hurricane deductible, as required by the terms of the policy endorsement.

Reversed and remanded with instructions.