[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10364

_____

CERTAIN UNDERWRITERS AT LLOYDS, LONDON,

                                    Plaintiff-Counter Defendant-Appellee,

*versus*

ANCHOR INSURANCE HOLDINGS, INC.,
ANCHOR PROPERTY & CASUALTY INSURANCE COMPANY,

                                    Defendants-Counter Claimants-Appellants,

NICK W. GRIFFIN, et al.,

                                    Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-00370-TPB-AEP

_____

Before WILSON, ROSENBAUM, and ABUDU, Circuit Judges.

PER CURIAM:

This appeal concerns an insurer's suit to rescind an insured's policy. Plaintiff-Appellee Certain Underwriters at Lloyds, London (Lloyd Underwriters) sued Defendants-Appellants Anchor Insurance Holdings, Inc., and Anchor Property and Casualty Insurance Company (collectively, Anchor). Lloyd Underwriters sought rescission of an insurance policy issued to Anchor, alleging Anchor made certain misrepresentations and omissions in its insurance application regarding a series of pre-existing disputes with investors. The district court granted summary judgment to Lloyd Underwriters. On appeal, Anchor challenges that decision on multiple grounds.

After careful review and with the benefit of oral argument, we resolve this case on alternative grounds.[1] We find that the claims at issue were first made before the policy's inception and, as

_____

[1] "We may affirm for any reason supported by the record, even if not relied upon by the district court." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020) (internal quotation marks omitted).

a result, are excluded under the policy's terms.  Thus, while we also hold in favor of Lloyd Underwriters, we vacate the district court's judgment and remand for proceedings consistent with this opinion.

## I.  Background

This case involves several insurance and investment entities. Anchor is a holding company.  It had five board directors pertinent to this suit:  Daniel Bowman, Chris Moench, Kyle Hooker, Steven Esrick, and Nick Griffin.  THD Enterprises, LLC and THD Enterprises II, LLC (collectively, THD Entities) are single purpose entities solely created to buy Anchor stock.  Bowman, Moench, and Hooker served both as Directors of Anchor and Managers of THD Entities.[2]  Esrick and Griffin only served as board members of Anchor.

On October 16, 2018, Anchor applied for liability insurance with Lloyd Underwriters.  The application required Anchor to report any pending "claim[s]," and knowledge of any act, error, or omission that could give rise to a "claim."  Anchor answered "no" to both questions.  The application also required that Anchor supplement with any changes between the application's date and the effective date of its policy.  It further warranted that "[a]ny misrepresentation, omissions, concealment or incorrect statement of a

---

[2] Their roles as managers stemmed from funds that formed THD Entities. Bowman and Hooker managed two investment companies referred to as "Tibbetts Entities" that invested in THD Entities.  Moench founded Directed Capital Resources, LLC (DCR), a commercial mortgage investment company that also invested in THD Entities.

material fact, in this application or otherwise, shall be grounds for [] rescission of [the] policy issued."

On November 30, 2018, Lloyd Underwriters issued a policy to Anchor providing $5,000,000 in Directors & Officers Liability Coverage (D&O Coverage) for a premium of $79,098. Under its terms, Lloyd Underwriters has a duty to indemnify Anchor for any loss from a "Claim first made . . . during the Policy Period . . . for any Directors and Officers Wrongful Act." "Claim" means "a written demand for monetary, non-monetary or injunctive relief." And a "Wrongful Act" "means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act." The policy provides that a "Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured."

In 2021, Lloyd Underwriters sued Anchor for rescission of this policy, among other relief, for Anchor's purported failure to disclose certain claims, demands for rescission, and pre-suit mediation in its application. Lloyd Underwriters based its suit on a series of events between investors, THD Entities, and Anchor. The events are explained as follows.

In late 2017, a group of investors purchased shares in THD Entities. The group included Esrick and some of his acquaintances. A month or so after their purchases, the investors notified Bowman, Hooker, and Moench that they believed THD Entities had failed to disclose that Anchor was conducting a $15 to $20 million debt raise, which could jeopardize the investors' priority interest.

From January to March 2018, Esrick (on behalf of the investors) corresponded with Bowman, Hooker, Moench, and Griffin. He stated that the investors believed they overpaid for their THD shares based upon Anchor's debt raise, and demanded to rescind their purchases or require other THD Entities investors to buy out their shares.

In April and May, the investors sent formal rescission demands.[3] In June, the investors sued THD Entities—but not Anchor—for rescission in Florida state court. On October 25, 2018, the investors served Anchor with a deposition subpoena. On November 7, 2018, Esrick was deposed, with Bowman and Moench in attendance. Finally, in December 2018, the investors moved to amend their complaint, including adding Anchor as a defendant.

Because THD Entities solely invested in Anchor, Lloyd Underwriters claimed that Anchor should have disclosed the emails, rescission demands, deposition subpoena, and suit against THD Entities as pending claims, or acts that could give rise to a claim, in completing their insurance application. Therefore, Lloyd Underwriters argued, the policy should be rescinded, and D&O Coverage denied for the investors' suit.

After discovery, both entities moved for some form of summary judgment. Anchor moved for partial summary judgment, stating that Lloyd Underwriters had a duty to defend the underlying investors' suit. Meanwhile, Lloyd Underwriters sought

---

[3] This includes various letters dated April 6, May 8, and May 15, 2018.

summary judgment on the grounds that Anchor's directors knew—11 months prior to their insurance application—that investors were demanding rescission of their entire $11.7 million investment in THD Entities, which invests solely in Anchor. Anchor responded, alleging that Lloyd Underwriters inappropriately collapsed the corporate distinction between THD Entities and Anchor, with no formal demand on Anchor itself since the shares were only purchased in THD Entities.

After a hearing on the motions, the district court granted summary judgment for Lloyd Underwriters and denied Anchor's partial summary judgment motion. It found the record clear that Anchor had "actual knowledge of the potential claims against it by the [i]nvestors." Specifically, the court noted (1) a March 14, 2018, email in which Bowman wrote to Moench and Hooker explaining that the investors wanted rescission in THD Entities, and (2) an April 6 demand letter sent to Bowman, Moench, and Hooker by investors' counsel. The court further highlighted Bowman's deposition testimony that he did not believe investors would walk away from their investment without eventually suing Anchor. Together, the court found: this knowledge and belief imputable upon Anchor; that Lloyd Underwriters had been deprived of a meaningful opportunity to underwrite its exposure; and the policy was due to be rescinded.

Anchor timely appealed.

## II.  Standard of Review

"We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party."  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (alterations adopted and quotations omitted).  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.  Discussion

The parties agree that because this policy arose in Florida, its provisions are governed by Florida law.  Florida law construes insurance contracts in accordance with a policy's plain language. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).  And a "claims[-]made policy" provides coverage only if a claim is first made against an insured during the policy period.  *First Pros. Ins. Co. v. McKinney*, 973 So. 2d 510, 514–15 (Fla. Dist. Ct. App. 2007).

The parties also agree that the policy is a claims-made policy. *See id.*  We therefore must turn to the policy's plain language to determine whether a "claim" was first made before or during the policy period.  *See Swire Pac. Holdings, Inc.*, 845 So. 2d at 165.  Thus, under the policy's terms, we must determine whether Anchor or its directors had written notice of a "demand for monetary, non-monetary or injunctive relief" surrounding "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act" before or after November 30, 2018.

The parties dispute whether the events surrounding the investors' underlying lawsuit amount to a "claim" that occurred prior the policy's inception. Each party cites several cases supporting their opposing positions. For example, Lloyd Underwriters point to *Ditech Financial LLC v. AIG Specialty Insurance Company*, where a U.S. Trustee sent an email that it "intends to move forward with discussions concerning a national settlement." No. 8:20-cv-409, 2021 WL 4263330, at *8 (M.D. Fla. Sept. 20, 2021). The district court held that the email constituted a claim first made before the policy because it was "not a simple request for more information or a mere inquiry into some untoward event"; rather, it "contain[ed] a specific demand . . . to rectify the legally cognizable damage." *Id.* In contrast, Anchor directs us to *Scott v. Certain Underwriters at Lloyd's London*, where the court ruled that a letter stating that a claimant was "prepared to take all necessary steps to enforce [its] rights" and "intend[ed] to pursue all available remedies" did not constitute a claim. No. 21-82054-CIV, 2022 WL 18779694, at *1, 4 (S.D. Fla. Feb. 23, 2022).

Based upon this record, we find that the investors' rescission demands constitute claims first made before the policy. Beginning in January 2018, Esrick spoke to various members of Anchor's management concerning the investments. On March 14, 2018, Bowman emailed other members of Anchor's leadership, explaining that the investors wanted rescission due in large part to Bowman's leadership and responsibility for its results. These disputes led to a formal demand letter on April 6, formally listing Bowman as Chairman of Anchor and pointing to THD Entities' investments in

Anchor. Several demands followed on May 8 and May 15, with increasing detail and particularity. Then, on October 25, Anchor itself was served with a subpoena for a deposition in the underlying suit. Bowman and Moench attended Esrick's deposition on November 7. This escalatory series of events reveals that, at least by April 6, the investors had made a written demand of Hooker, Moench, and Bowman for relief from their investments, tied up in Anchor's funds, for misleading omissions surrounding Anchor's debt raise. Accordingly, the record demonstrates no genuine dispute of material fact that a claim was made prior to the policy's inception.

Anchor argues that this construction of a "claim" is far too narrow. Relying on *Scott* and its authorities, Anchor principally contends that the correspondence is not sufficiently time-constrained to constitute a claim. 2022 WL 18779694, at *3–4. We are not persuaded. The communications in *Scott* coincide much more closely to language threatening only possible future action. *See, e.g.*, *id.* at *1, 3. In contrast, this case presents several formal rescission demands amounting to "a specific demand for [the Insured] to rectify the legally cognizable damage created by its [Wrongful Acts]." *Ditech Fin. LLC*, 2021 WL 4263330, at *8. Because these demands came long before the beginning of the policy period, Lloyd Underwriters are not obliged to provide coverage for the investors' claims.

### IV.  Conclusion

We find that the investors' claims were first made before the policy's inception.  Accordingly, Lloyd Underwriters are not contractually required to provide coverage for those claims.  While we agree with the district court's ultimate decision in favor of Lloyd Underwriters, its current judgment rests on a theory of rescission, as opposed to exclusion.  We therefore **VACATE** and **REMAND** for further proceedings, wherein the district court shall amend the judgment to be consistent with this opinion.